STATE *ex rel.* McCONNELL *v.* PARK BANK & TRUST CO.

(*Nashville.* December Term, 1924.)

BANKS AND BANKING. Claims of creditors against insolvent bank held entitled to interest before stockholders share in surplus.

Allowed claims against insolvent bank have efficacy of judgments and where there is surplus after paying claims they bear interest from time of filing petition, before distribution to stockholders, in view of Shannon Code, section 3273a52, 3273a54, 3273a55, 3273a61-3273a63, 3496, 3497, and no formal demand for payment of claims payable on demand is necessary.

Acts cited and construed: Acts 1913, ch. 20.

Cases cited and approved: Sickles v. Herold, 149 N. Y., 332; Nat. Bank of Commonwealth v. Mechanics' Nat. Bank, 94 U. S., 437; Richmond v. Irons, 121 U. S., 64; Mahoney v. Bernhard, 45 App. Div., 499; Wheeler v. Millar, 90 N. Y., 353; Thurston v. Wolfborough Bank, 18 N. H., 391; In re John Osborn's Sons & Co., 177 F., 184.

Cases cited and distinguished: Stewart v. Barnes, 153 U. S., 458; Moore v. Fuller, 2 Jones (Law), 47 N. C., 205; In re Osborn's Sons & Co., 177 F., 184; Nat. Bank of Commonwealth v. Merchants' Nat. Bank, 94 U. S., 437; Richmond v. Irons, 121 U. S., 27; People v. Merchants' Trust Co., 187 N. Y., 293; People v. Am. Loan & Trust Co., 172 N. Y., 371; Ex parte Stockman, 70 S. C., 31; Johnson v. Norris, 190 F., 459.

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County.— HON. ISRAEL H. PERES, Chancellor.

J. S. Allen, for McConnell.

P. A. Rush and P. H. Phelan, Jr., for defendants.

Mr. Justice McKinney delivered the opinion of the Court.

The original bill in this cause was filed on April 15, 1918, by the superintendent of banks, pursuant to chapter 20 of the Acts of 1913, creating the department of banking, for the purpose of administering the defendant bank as an insolvent corporation.

The superintendent took charge of said bank and filed the original bill by virtue of a resolution passed on said date by the board of directors, which is as follows:

"Memphis, Tennessee, April 15, 1918.

"Minutes of a called meeting of the board of directors of the Park Bank & Trust Company held April 15, 1918, at 12:05 a. m.

"Meeting was called to order by the chairman, Dr. H. C. Stevenson. After stating object of the meeting, the loss of $15,000 in transit between Bank of Commerce & Trust Company and the Park Bank & Trust Company, said loss making us insolvent.

"Motion moved and seconded that affairs of bank be turned over to the State banking department for liquidation, with the request that the department, in connection with the directors of the bank, endeavor to have some bank in the city take over our assets and assume the liabilities, with the exception of any liability to any stockholder, and pay off the depositors as speedily as possible."

According to the provisions of said act, upon the filing of the bill, the superintendent was appointed receiver, and proceeded in the usual way to liquidate the affairs of the bank. The following dividends were paid by the receiver, to-wit:

July 13, 1918 ........................... 50 per cent.
October 29, 1918 ........................ 25 per cent.
December 8, 1919 ....................... 15 per cent.
March 12, 1923 ......................... 10 per cent.

Total .............................. 100 per cent.

On March 15, 1923, the receiver filed his report in the cause. Also a petition. · In the latter he alleged that, after paying all costs and expenses, and after paying depositors and creditors the face value of their claims, there remained in his hands the sum of $1,757.75; that other funds might come into his hands, and he asked the court for instruction as to whether he should turn over this fund to the stockholders, or prorate same among the creditors as interest on their claims.

Certain stockholders filed an answer and cross-bill, alleging that they were entitled to the fund, and denying the right of creditors to any interest.

The cross-bill was demurred to upon the ground that, under the law, the creditors were entitled to the fund as interest. Upon the hearing the chancellor sustained the demurrer and dismissed the cross-bill. From his decree the stockholders have appealed and have assigned numerous errors.

The only question which we shall dispose of in this opinion is the right to this fund as between the creditors and the stockholders.

The Banking Act does not expressly provide for payment of interest to creditors. The provisions of the act, pertinent to this inquiry, as set forth in Shannon's Code, are as follows:

Section 3273a52: "The superintendent shall cause notice to be given by advertisement in such newspapers as he may direct weekly, once a week for six consecutive weeks, calling on all persons who may have claims, but not including deposits shown by the books of the bank which shall *prima facie* be a proven claim, against the bank, against such corporation, firm, or individual banker, to present the same to the superintendent and make legal proof thereof, at a place and within a time to be specified in the notice, not less than ninety days from the day of the first publication of the notice."

Section 3273a54: "If the superintendent doubts the justice and validity of any claims or deposits, he may reject the same and serve notice of such rejection upon the claimant or depositor, either by mail or personally, and an affidavit of service of such notice, which shall be *prima facie* evidence thereof, shall be filed in the office of the superintendent."

Section 3273a55: "An action upon a claim so rejected must be brought by the claimant within six months after such service, or the same shall be barred."

Section 3273a61: "At any time after the expiration of the date fixed for the presentation of claims, the superintendent may, out of the funds remaining in his hands after the payment of expenses, declare and pay one or more dividends to creditors, and after the expiration of one year from the first publication of notice to the credi-

tors to present claims, he may declare and pay a final dividend.''

Section 3273a62: ''Objections to any claim or deposit not rejected by the superintendent may be made by any party interested by filing a copy of such objections with the superintendent, who will present the same for adjudication to the court having jurisdiction before the time of the next application to declare a dividend, after due and legal notice to the claimant or depositor.''

Section 3273a63: ''Whenever the superintendent shall have paid to each and every depositor and creditor of such corporation, firm, or individual banker whose claim or claims as such creditor or depositor shall have been duly proven and allowed the full amount of such claims, and shall have made proper provisions for unclaimed and unpaid deposits or dividends, and shall have paid all of the expenses of liquidation, the superintendent shall deliver the remaining assets in his hands to the firm or individual banker.''

Our interest laws bearing upon the question, as set forth in Shannon's Code, are as follows:

Section 3496: ''If the debt be payable on demand, the interest shall be computed from the day of the demand; and suing for the debt shall be equivalent to an actual demand.''

Section 3497: ''And interest shall be computed on every judgment from the day on which it was entered up.''

For the creditors it is insisted that the allowance of claims, under the provisions of the act, had the same efficacy as judgments, and hence they should bear inter-

est as such, and it is further contended that the claims, particularly deposits, were payable upon demand, and that the act of filing an insolvent bill, for the purpose of liquidation, dispensed with the necessity of any formal demand on the part of creditors · for payment, and entitled them to interest from the filing of the bill.

For the stockholders it is contended that, having received the face value of their claims without interest, and without demanding interest, the creditors cannot now set up any claim for interest, nor can the receiver do so for them.

The general rule, which the stockholders invoke, is thus stated in 17 Corpus Juris, 814, to wit:

"Where interest is recoverable as damages, it does not constitute a distinct claim and can only be recovered with the principal by action. So when payment of the principal as such is made and accepted, no interest can be recovered, the payment of the debt extinguishing the right to recover interest thereon."

The leading case supporting the text is *Stewart* v. *Barnes,* 153 U. S., 458, 14 S. Ct., 849, 38 L. Ed., 781, in which it was held that interest could not be recovered, as damages, for the detention of the principal, after the principal sum had been paid and accepted. In that case the· plaintiff received and receipted for the amount of taxes which he claimed had been wrongfully exacted from him, and sued to recover interest on same. The court denied a recover and said:

"Where money is retained by one man against the declared will of another who is entitled to receive it, and who is thus deprived of its use, the rule of courts in

ordinary cases is, in suits brought for the recovery of the money, to allow interest as compensation to the creditors for such loss. Interest in such cases is considered as damages, and does not form the basis of the action, but is an incident to the recovery of the principal debt. The right of action is the right to compel the payment of the money which is being retained. When he who has this right commences an action for its enforcement, he at the same time acquires a subordinate right, incident to the relief which he may obtain, to demand and receive interest. If, however, the principal sum has been paid, so that, as to it, an action brought cannot be maintained, the opportunity to acquire a right to damages is lost.

"This principle is well illustrated by an early case. *Moore* v. *Fuller*, 2 Jones (Law), 47 N. C., 205, decided by the supreme court of North Carolina. That was an action of debt on a bond. The principal of the debt had been paid, and at the time of payment the parties had agreed to refer the question of interest, the payment of which was refused, to arbitration. Upon an award made in favor of the plaintiff, the defendant still refused to pay the interest, and it was sought to be recovered in an action, not upon the award, but on the bond. The supreme court said: 'The general principle is, that when the principal subject of a claim is extinguished by the act of the plaintiff, or of the parties, all its incidents go with it.'"

In that, and kindred cases, the plaintiff had the right to exact the principal sum with interest, and, having accepted and receipted for the principal sum, he thereby

waived or relinquished his claim to interest. To illustrate, A owes B $1,000, evidenced by note sixty days past due, and pays him the $1,000 and receives his note. B cannot subsequently maintain an action for the interest that was due when the note was surrendered. But this rule has no application, under the authorities and upon principle, in an insolvency proceeding. The sustaining of the bill operates as an injunction against suits by creditors. The act provides the method for paying dividends on claims until they are liquidated, or until the assets of the insolvent are exhausted. The creditor, in the due course of administration, has no legal right at any particular time to demand either principal or interest and institute suit if payment is refused. He is only entitled to receive dividends as they are declared by the receiver. The question of waiver or relinquishment is not involved. The law never requires useless formalities. No object could be accomplished in an insolvency proceeding by a creditor formally demanding the amount of his deposit with interest. If his demand were refused, as it would be, he has no recourse, and could not sue for either the principal or the interest.

It is quite different in cases like those relied upon by the stockholders. There the creditor could lawfully demand both principal and interest, and, if payment were refused, could sue immediately for both. But he cannot accept the principal and then sue for interest.

Ordinary deposits are payable upon demand, and, under our statute quoted above, interest shall be computed from the day of the demand. As previously stated, useless formalities are not required, and, under all of the

authorities to which our attention has been called, where an insolvent bill is filed, especially a voluntary one, as in this cause, the law does not require a formal demand for payment. The act of going into liquidation dispenses with the necessity of a useless and formal demand.

It is true that, as a general rule, under the various insolvency acts, State and federal, interest is not allowed. But the rule is not invariable.

In 14a Corpus Juris, 1014, it is said: "Ordinarily interest is not allowed on claims after declared insolvency, or appointment of receivers unless there are sufficient funds on hand to pay all depositors and accrued interest."

The reason for the general rule is thus stated by the circuit court of appeals in *In Re Osborn's Sons & Co.*, 177 F., 184, 100 C. C. A., 392, 29 L. R. A. (N. S.), 887:

"This is the usual rule in all cases of insolvency, because, the assets almost invariably not being sufficient to pay the debts, calculations of interest are waste of time."

The Tennessee State Banking Act and the federal Banking Act (13 Stat., 99) are substantially the same. The latter act, like our own, makes no express provision for the allowance of interest to creditors.

In construing the federal act, the supreme court, in *National Bank of Commonwealth* v. *Mechanics' National Bank*, 94 U. S., 437, 24 L. Ed., 176, said:

"The fiftieth section of the National Banking Act (13 Stat., 113) requires the comptroller of the currency to apply the moneys paid over to him by the receiver 'on all such claims as may have been proved to his satisfaction, or adjudicated in a court of competent jurisdiction.'

The act is silent as to interest upon the claims before or after proof of judgment. Can it be doubted that a judgment, if taken, would include interest down to the time of its rendition? Sec. 996 of the Rev. Stat., p. 182, declares that all judgments in the courts of the United States shall bear the same rate of interest as judgments in the courts of the States respectively where they are rendered. Interest is allowed by the law of New York upon judgments from the time they are perfected. Rev. Code of N. Y. (Ed. 1859), vol. III, p. 637.

"If these claims had been put in judgment, whether in a court of the United States or in a State court of that State, the result as to interest upon the judgment would have been the same. It was unnecessary to reduce them to judgment, because they were proved to the satisfaction of the comptroller. After they were so proved, they were of the same efficacy as judgments, and occupied the same legal ground. Hence, they are within the equity, if not the letter, of these statutes, and bear interest as judgments would have done. Sedgw. on Stat. Constr., 311, 315."

Demand was made in that case for interest when each dividend was paid, but, as previously stated, that was a useless formality and could not change the result.

In *Richmond* v. *Irons*, 121 U. S., 27, 7 S. Ct., 788, 30 L. Ed., 864, the supreme court said:

"Three other questions raised upon the record remain to be disposed of. The first is whether interest upon the debts of the bank should be allowed as against the stockholders from the date of the suspension. As the liability of the shareholder is for the contracts, debts,

and engagements of the bank, we see no reason to deny to the creditor as against the shareholder the same right to recover interest which, according to the nature of the contract or debt, would exist as against the bank itself; of course, not in excess of the maximum liability as· fixed by the statute. In the case of book accounts in favor of depositors, which was the nature of the claims in this case, interest would begin to accrue as against the bank from the date of its suspension. The act of going into liquidation dispenses with the necessity of any demand on the part of the creditors, and it follows that interest should be computed upon the amounts then due as against the shareholders to the time of payment.''

In *People* v. *Merchants' Trust Co.*, 187 N. Y., 293, 79 N. E., 1004, a case in its facts similar to the one here involved, the court said:

''In the case of *People* v. *American Loan & Trust Co.* [172 N. Y. 371], VANN, J., in delivering the opinion of the court, said:

'' 'If the assets are sufficient to pay all, including interest, it must be paid, for; as against the corporation itself, interest should be allowed before the return ·of any surplus to the stockholders.'

''It may be admitted that these remarks were unnecessary to the disposition of the case then under consideration, but the rule thus asserted appears to us to be so eminently just and so well supported by other authority, that we now have no hesitancy in adopting it as the rule that should be adhered to in disposing of questions of this character. It is not only in accord with the views expressed in the case of *Sickles* v. *Herold,* 149 N. Y., 332,

but with those expressed in *National Bank of Commonwealth* v. *Mechanics' National Bank,* 94 U. S., 437; *Richmond* v. *Irons,* 121 U. S., 64; *Mahoney* v. *Bernhard,* 45 App. Div., 499, affirmed 169 N. Y., 589; and *Wheeler* v. *Millar,* 90 N. Y., 353, 363.''

Another similar case is that of *Ex parte Stockman,* 70 S. C., 31, 48 S. E., 736, 106 Am. St. Rep., 741, in which the court said:

''The debt of a bank to a general depositor is payable on demand, the demand being usually in the form of a check. In the absence of express agreement there is no interest on deposit accounts until demand and refusal. When, however, a bank permanently closes its doors—suspends payment—it expresses its inability and its refusal to pay depositors' checks. This is the recognized business method of indicating the futility of actually presenting a check or making demand in any other way for payment. When the bank thus expresses its refusal to pay any depositor, it would be useless to require each depositor to have the refusal repeated to him. The depositor is, therefore, entitled to interest from the date of suspension as damages for breach of the contract to pay his checks on presentation.''

In *Thurston* v. *Wolfborough Bank,* 18 N. H., 391, 45 Am. Dec., 382, it was held that, where a demand was necessary, a bank may waive its right to insist upon a demand by closing its bank and having no place of business.

In *Johnson* v. *Norris,* 190 F., 459, 111 C. C. A., 291, L. R. A., 1915B, 884, the bankrupt moved that the sur-

plus assets be paid over to him.   The motion was denied, the court saying:

"When the bankrupts, or the trustees acting for them, move the court- to direct the fund to be paid to them, they should be required to do equity by paying the interest due by law up to date.   .   .   .

" 'In settling the tableau of distribution, therefore, the interest upon those debts which bear interest or upon which it is recoverable as damages, upon settled legal principles, should be computed to that time (the date of assignment); and, if any debts are not then due, and which are not upon interest, a proper discount should be made.   As to subsequent interest, if the debts are not paid at that time, and the fund which is afterwards realized by the assignee is more than sufficient to pay the amount thus found due at the time of the assignment, the interest on all the debts subsequent to the assignment should be paid ratably out of the surplus. ''

In *Johnson* v. *Norris,* 190 F., 459, 465, 111 C. C. A., 291 (L. R. A., 1915B, 884), the court said:

"The facts are not very clearly and fully stated in *Re John Osborn's Sons & Co.,* 177 F., 184, 100 C. C. A, 392, 29 L. R. A. (N. S.) 887; but the statement is sufficient to show that certain claims based on accounts had been proved against the bankrupt's estate and paid in full by dividends, and that the controversy was as to whether a surplus should be paid to the bankrupts or be used in paying interest on the claims, including interest which accrued subsequent to the allowance of the claims. The court, deciding that the proof and allowance of the claims were, in effect, judgments, held that they were en-

titled to be treated as judgments, and, as such, interest accruing both before and after their allowances should be paid on the claims. And *National Bank of Commonwealth* v. *Mechanics' National Bank,* 94 U. S., 437, 24 L. Ed., 176, is cited as sustaining this view by analogy. The Osborn case is the only one to which our attention has been called, involving the distribution of a surplus, that has arisen under the present bankruptcy act.''

There are other cases to the same effect, and we have found none to the contrary in our investigation.

Prior to the adoption of our State banking act, creditors filed and proved their claims, for which decrees were rendered drawing legal interest from the date of their entry. In our opinion, it was not the purpose of the act to deprive creditors of such interest, but such proved claims were intended to have the *status* of judgments. The object of the act was to provide a safe, speedy, and inexpensive method of establishing claims against an insolvent, and especially to obviate the necessity of going to the expense and trouble of filing petitions, taking depositions and entering long decrees formally adjudicating liability on uncontested claims, which the books of the bank showed to be correct and due.

Construing the act, we hold that in insolvency proceedings allowed claims have the efficacy of judgments; and, further, that, in such proceedings, formal demand for payment is not necessary, but that such demand will be treated as having been made, and will bear interest from the filing of the petition in cases where a surplus exists after the payment of the face value of all claims.

The chancellor decreed the fund to the creditors, as interest, after allowing the attorney for the receiver a fee for services rendered in the cause, and his decree will be affirmed and the cause remanded for further proceedings.