PALLANGE, Respondent, vs. LIBERTY STATE BANK and others, Defendants: FIRST WISCONSIN NATIONAL BANK, Appellant.

*September 14—December 4, 1934.*

For the appellant there was a brief by *Miller, Mack & Fairchild,* and oral argument by *Paul R. Newcomb,* all of Milwaukee.

*William E. Burke* of Milwaukee, for the respondent.

The following opinion was filed October 9, 1934:

FAIRCHILD, J. This appeal presents a question as to the extent of the powers of the commissioners of banking over causes of action belonging to a bank in the process of liquidation. Some unusual features are present for the reason that the commissioners, under the banking act, are statutory receivers and not receivers appointed by the court. Sub. (3) of sec. 220.08, Stats., reads:

"Upon taking possession of the property and business of such bank or banking corporation, the commissioner is

authorized to collect moneys due to such bank or banking corporation, and do such other acts as are necessary to conserve its assets and business, and shall proceed to liquidate the affairs thereof, as hereinafter provided. The commissioner shall collect all debts due and claims belonging to it, and upon the order of the circuit court may sell or compound all bad or doubtful debts, and on like order may sell all the real and personal property of such bank or banking corporation on such terms as the court shall direct; and may, if necessary to pay the debts of such corporation, enforce individual liability of the stockholders."

On the part of the appellant it is contended that this section vests in the commissioners the title and possession of all property of the bank and vests in them all causes of action in its favor. It is urged that the commissioners have complete discretion as to bringing actions upon these causes of action, and that neither the stockholder, creditor, nor the court may interfere with this discretion unless the court may direct the commissioners to sue upon the claim. The result of this would be that the court could not order or authorize a creditor to maintain any action upon a cause of action belonging to the bank in the face of a refusal by the commissioners to take appropriate action. On the other hand, respondent claims that upon a refusal to begin an action on a given claim, a creditor may institute one. We are of the opinion that neither contention can be wholly sustained.

The complaint, on its face, fails to show the presentation by respondent of his objection to the conduct of the commissioners to the circuit court for Milwaukee county, and fails to show that the action is begun pursuant to an order authorizing him to bring this action. Is a failure to follow that course and to plead the taking of such steps fatal to the sufficiency of the complaint? We hold that the provisions of the act creating the banking department and fixing the duties of the commissioners of banking require us to answer the ques-

tion just stated in the affirmative. When the system as a whole is fully reviewed, this ruling does not result in a mere technical point, but goes to a substantial matter necessary to maintain the integrity of the discretion lodged in the commissioners by statute, and results at the same time in a protection of rights of creditors which may be jeopardized by the negligence or fraud of the commissioners.

By virtue of sec. 220.08, Stats., the commissioners are intrusted, among other things, with the affairs of banks in liquidation. They are not receivers as that word is generally understood. Although they are properly described as statutory receivers, they are executive or administrative officers carrying out a legislative policy. Authority is conferred upon them by statute. It does not come as a result of any proceeding in court, although the law provides that in many respects their acts in winding up the affairs of an insolvent bank are subject to the supervision of the circuit court for the county in which the banking institution is located. The result sought under the method of appointing a receiver by the court is identical in the main with the ultimate accomplishment expected in the process of liquidation of a bank under the banking act. The commissioners stand in the place and stead of the bank with the power to take possession of its property and business, to collect moneys due, to perform such acts as are necessary to conserve assets and business, and to proceed with the liquidation. Upon the order of the circuit court, the commissioners may sell or compound all bad or doubtful debts, and may sell real or personal property on such terms as the court shall direct. They are required to hold possession of the assets of the corporation and to proceed with the conduct of affairs until liquidation or reorganization has occurred. Authorized to act in relation to the affairs of the bank as they deem necessary to conserve the assets and business, they are also charged with the duty of husbanding the

resources, including the collecting of debts and claims belonging to it, and to compound doubtful debts upon such terms as the court shall direct. The right of a creditor to maintain an action independently of the commissioners against one claimed to be indebted to the bank is circumscribed by the nature and extent of the powers conferred upon the commissioners and the requirement of the performance of certain duties by them.

We agree with the respondent that the giving to the commissioners of an exclusive right to control all claims, without providing for an adequate remedy to a creditor upon refusal by the commissioners to prosecute and collect such claims, is unreasonable and would result in the denial of due process of law. But the law placing the commissioners in charge of the management of the business of a bank does not offend in that particular. The commissioners are officers of the state. Broad powers are conferred upon them and in the exercise of these powers they are to use discretion. Their decisions, however, must be based upon substantial reason. They cannot extinguish or forgive a debtor a valid claim by abandoning it any more than they can settle one upon partial payment. Unless sufficient reason for a compromise exists from the standpoint of the estate in their charge, the commissioners must collect in full. The proceeding under the statute is in effect a winding-up proceeding. If the commissioners were receivers deriving their power from a proceeding in court, an independent action by a creditor to enforce a right of the corporation against defaulting officers or others would not be proper until the court had so ordered. *Cunningham v. Wechselberg,* 105 Wis. 359, 81 N. W. 414. The statute placing the management in the hands of the commissioners does not change the procedure and, while not depriving a creditor of any of his rights, it regulates his remedies. Due and effective administration of the law requires the prevent-

ing of the creditor's ill-timed interference. The reasons which underlie the practice of having the court regulate the time and manner of a creditor's intervention in the affairs of an insolvent bank in the hands of a receiver are present in the instant case, and are just as potent in this instance as in the other against such interference with the management of the commissioners. Should the commissioners' effort or proposal to compromise any claim be objectionable to any creditor, such creditor has the right to be heard in opposition to such compromise. Mismanagement in such a matter through carelessness or other fault of the commissioners is a wrong upon which the court's control will act. The important right of a creditor to intervene when circumstances call for such intervention is a creature of the courts of equity. Although it is often expressly given by statutory enactment, it exists at common law in the absence of any legislation on the subject. Morse, Banks and Banking (5th ed.), § 717. And the courts will, on the petition of a creditor, interpose their powers to remedy or prevent the wrong which follows when those charged with a duty to act fail or refuse to take the proper action.

The case of *Isaac v. Marcus,* 258 N. Y. 257, 179 N. E. 487, dealt with facts quite similar to those of the case at bar. The opinion in that case furnishes substantial support for the construction this court gives the statute here involved. There are cases in other jurisdictions holding to the contrary, and the respondent cites some, among them the case of *Blythe v. Enslen,* 219 Ala. 638, 123 So. 71, 75. But a full consideration of the banking act under which our legislature has provided for the regulation of banking, and in case of insolvency of a bank, to supersede the officers and stockholders with the commissioners of banking in the control of the bank's affairs, convinces us that the purpose of the law is to place upon the commissioners the duty of prosecuting causes of action when-

ever in their opinion it will be to the advantage of the matters intrusted to them. That duty and the accompanying power must be free from the embarrassment of hasty or ill-considered action by the depositor or creditor. Referring again to the *Isaac Case, supra,* we find on page 267 of the report, the following:

"Even though the courts still remain open to stockholders for the protection of corporate rights where those in control of the corporation are remiss in protecting those rights, after the superintendent of banks has taken possession of the business of a banking corporation, a stockholder, appealing to the courts, must show that the superintendent of banks has failed and refused to bring such an action and that an action by a stockholder would not hamper unreasonably the liquidation of the corporation. Otherwise there must be intolerable confusion and, by choice of a stockholder, the statutory liquidator must be deprived of part of the authority conferred upon him by the legislature. It cannot be supposed that the legislature intended that a stockholder and the superintendent of banks should have authority to maintain, at the same time, separate actions upon a single cause of action 'vested' in the stockholder. Either superintendent or stockholder must have a paramount right and the implication in the statute is clear that it is the superintendent who has such right. So the courts have construed similar provisions in statutes of other jurisdictions. Analogy is not complete, but the uniformity of the decisions in other jurisdictions points to the same construction of our statute [citing cases]. We do not say that the right of the superintendent of banks is exclusive. There may be times when the interests of a stockholder and the rights of the corporation can be adequately protected only by action instituted by a stockholder even after the superintendent of banks has taken control of the corporation. It would be unreasonable to construe the statute as limiting not only the right of a stockholder to bring an action but the power of a court of equity to remedy or restrain a wrong to the corporation. We say that the grant of power to the superintendent of banks to maintain an action vested in the corporation or stockholder or creditor by necessary implication precludes the stockholder or creditor

from instituting such an action until he shows that he is injured or aggrieved by failure, refusal or inability of the superintendent of banks to remedy the alleged wrong. He must first exhaust the means within his reach to induce adequate remedial action on the part of the superintendent."

The failure to prosecute diligently a claim by the commissioners is a subject within the court's supervisory power. The statutory provisions under consideration give a prior and superior right to litigate and compromise such claims to the commissioners. It is apparent that in the process of winding up the affairs of the banking institution the creditors are protected in their right to complain of improper abandonment or compromise of claims. It follows that the right exists to compel recalcitrant commissioners to act in the performance of the duties imposed upon them or to have a claim over which question has arisen prosecuted under the direction and order of the proper court. It is conceivable that in the liquidation proceedings there may be times when the interest of the creditors will be better served by an action instituted by a creditor. But it is important to avoid the confusion which would result if any individual creditor or several of them, suspicious of the acts of the commissioners, could each bring an action on a real or fancied cause of action, or one with respect to which the commissioners refused to bring an action because they were properly negotiating for a compromise. The legislature intended to prevent such practice. It required the commissioners to take charge of and proceed with liquidation of the affairs of the bank. In order to carry out the purposes of the act in a logical and orderly manner and to avoid the disruption and circumvention of well-laid plans relating to the adjustment of bad or doubtful debts, the authority to act is primarily in the commissioners. A creditor, not having the immediate control of the cause of action, who feels himself dissatisfied with the management of the com-

missioners, must present his complaint and objection to the court which has supervisory power. Before the right of the creditor to maintain an independent action directly against a debtor of the bank can be established, he must have the paramount title of the commissioners extinguished and must, to accomplish this, show more than a refusal by the commissioners presently to bring an action. As said in *Isaac v. Marcus, supra:*

"There may be sound reason why no such action should be brought. Before a court of equity will assert its power to protect a corporation against wrongs done to it, though the corporation asks no relief, there must be proof that the interests of the corporation and its creditors and stockholders will be served by appeal to the courts."

The presentation to the court of a petition showing grounds for the objection to the course pursued by the commissioners and the securing of an order directing the commissioners to show cause why they should not act will result in the commissioners and the petitioner disclosing facts enabling the court to protect the interests concerned. Such procedure would be in accordance with the plan of the legislature and is necessary for the carrying out of the legislative policy in dealing with institutions in which public confidence and interest is involved with private interest. If the commissioners have good reason for delaying the prosecution of the claim, the court, upon being duly advised, will not divest them of the right to the cause of action. If ulterior motives control the commissioners, the court will be in a position to adjust conflicting interests so that a single action for a single recovery may be instituted under conditions which will protect the rights of all. *Isaac v. Marcus, supra.*

Until preliminary proceedings have been had to take a cause of action from the commissioners and intrust it to the creditor with directions to proceed in the place and stead of

the commissioners, the independent action is an undue interference with a proceeding intrusted to an administrative officer. It is held therefore that the complaint fails to show a cause of action existing in respondent's favor.

*By the Court.*—Order reversed, and cause remanded for further proceedings according to law.

A motion for a rehearing was denied, with $25 costs, on December 4, 1934.