ROUNDUP SCHOOL DISTRICT NO. 11 OF MELLETTE COUNTY, Appellant, v. AGRICULTURAL CREDIT CORP., et al., Respondents.

(280 N. W. 659.)

(File No. 8132. Opinion filed June 30, 1938.)

*Sutherland & Payne,* of Pierre, for Appellant.

*M. Q. Sharpe* and *L. A. Bridgman,* both of Kennebec, for Respondent Agricultural Credit Corporation.

*Clair Roddewig,* Atty. Gen., and *Kermit Norbeck,* Asst. Atty. Gen., for Respondent James E. Stewart, Superintendent of Banks.

SMITH, J.  By this appeal the plaintiff challenges the propriety of an order of the circuit court denying plaintiff, a creditor of a defunct state bank, the right to institute or maintain a suit on behalf of itself and other creditors of said bank to enforce a claim against the defendant, the Agricultural Credit Corporation, which suit the defendant, the Superintendent of Banks, had refused to bring.  For convenience we refer to the Murdo State Bank as "the

Bank," and to the defendant, the Agricultural Credit Corporation, as "the Corporation."

From a showing made to the court it appears that in 1924, some eleven years prior to the date of plaintiff's application, the Bank borrowed $35,000 from the Corporation, and pledged as security therefor collateral of the Bank of the value of $70,573.41. This collateral included a $10,000 mortgage on the lot upon which the Bank building was situated. The Bank was closed for liquidation in May, 1926. In November, 1926, pursuant to an arrangement with the then Superintendent of Banks, the Corporation advanced the additional sum of $2,450.80 to the War Finance Corporation on behalf of the Bank, and there was then transferred to the Corporation to be held by it as collateral for the aggregate amount due it from the Bank, additional collateral of a face value of $29,741.46.

It is asserted by plaintiff that these transactions were prohibited by Chapter 124 of the Session Laws of 1919 (limiting the assets which may be pledged by a bank to 50% in excess of the amount borrowed) and by Chapter 92 of the Session Laws of 1925 (forbidding the pledging of assets in excess of 1½ times the amount of paid up capital and surplus.) The Bank had a paid up capital and surplus of $30,000.

In the inventory and reports made by the Superintendent of Banks with reference to his administration of the liquidation of the Bank, no mention was made of any claim of the Bank against the Corporation. At about the time the Superintendent was ready to wind up the liquidation of the Bank, the plaintiff made demand that he proceed against the Corporation to charge it as a trustee of the above described securities. The Superintendent refused to proceed, and thereafter this application was made to the court for an order permitting plaintiff to maintain the suit on behalf of itself and other creditors at their own cost and expense. This application was resisted by the Corporation and by the Superintendent of Banks. The ruling of the court was against the plaintiff, and was grounded upon the lapse of time and the conclusion that plaintiff had "* * * failed to make any sufficient showing of the disqualification of the present Superintendent of Banks or error in his judgment warranting any order displacing him or interfering with his liquidation of said bank * * *." The application of plain-

tiff was addressed to the court of the domicile of the Bank having supervision of the liquidation of the Bank, and purported to invoke the supervisory powers of the court as well as its general jurisdiction.

Appellants assert that the Superintendent abused his discretion and acted arbitrarily in refusing to proceed against the Corporation, thus giving rise to a proper occasion for the exercise of an established jurisdiction of the court. The respondents, on the other hand, urge that the Superintendent of Banks is an administrative officer charged by statute with the duty and power to liquidate insolvent banks, that his decisions in the premises are final, and that a "mere difference in judgment between the Court and the trustee will not warrant interfering with his decision."

██ Courts of equity have long afforded protection to minority interests in a going corporate concern and to creditors in an insolvent corporation as against the fraudulent, wrongful or arbitrary conduct of those in control. With some show of logic it has been suggested that efficient liquidation requires that the Superintendent of Banks have a free hand and that creditors and stockholders of insolvent banks no longer have need for the protecting arm of equity because the State has supplied them with a public officer as an independent, disinterested, liquidating agent. For these reasons it is said that courts of equity should refuse to exercise that particular jurisdiction for the benefit of those interested in insolvent banks. The contention has, however, been universally overruled by the courts. The cases are collected in 97 A. L. R. 169. The answer is well and fully stated by the Wisconsin court in the case of Pallange v. Liberty State Bank et al., 216 Wis. 418, 256 N. W. 708, 97 A. L. R. 164, wherein it states:

"We agree with the respondent that the giving to the commissioners of an exclusive right to control all claims without providing for an adequate remedy to a creditor upon refusal by the commissioners to prosecute and collect such claims is unreasonable and would result in the denial of due process of law. But the law placing the commissioners in charge of the management of the business of a bank does not offend in that particular. The commissioners are officers of the state. Broad powers are conferred upon them, and, in the exercise of these powers, they are to use discretion. Their decisions, however, must be based upon sub-

stantial reason. They cannot extinguish or forgive a debtor a valid claim by abandoning it any more than they can settle one upon partial payment. Unless sufficient reason for a compromise exists from the standpoint of the estate in their charge, the commissioners must collect in full. The proceeding under the statute is in effect a winding up proceeding. If the commissioners were receivers deriving their power from a proceeding in court, an independent action by a creditor to enforce a right of the corporation against defaulting officers or others would not be proper until the court had so ordered. Cunningham v. Wechselberg, 105 Wis. 359, 81 N. W. 414. The statute placing the management in the hands of the commissioners does not change the procedure and, while not depriving a creditor of any of his rights, it regulates his remedies. Due and effective administration of the law requires the preventing of the creditor's ill-timed interference. The reasons which underlie the practice of having the court regulate the time and manner of a creditor's intervention in the affairs of an insolvent bank in the hands of a receiver are present in the instant case and are just as potent in this instance as in the other against such interference with the management of the commissioners. Should the commissioners' effort or proposal to compromise any claim be objectionable to any creditor, such creditor has the right to be heard in opposition to such compromise. Mismanagement in such a matter through carelessness or other fault of the commissioners is a wrong upon which the court's control will act. The important right of a creditor to intervene, when circumstances call for such intervention, is a creature of the courts of equity."

The oppositeness of the foregoing statements, when applied to the precise phase of liquidation now under consideration, appears from an examination of the language of our statute dealing with debts due and claims belonging to an insolvent bank. "He shall collect all debts due and claims belonging to it and may upon order of the circuit court, after having made application therefor, sell or compound any or all bad or doubtful debts * * *." Section 8928 of the Revised Code of 1919. From this it appears that the primary duty of the Superintendent of Banks is to collect debts due or claims belonging to a trust. If he desires to sell or compromise bad or doubtful claims, he must secure authority from the supervisory court in a proceeding which will permit interested per-

sons to question, and the court to pass upon, the wisdom of his judgment. He is absolutely without authority to abandon debts due or claims belonging to a trust. A determination by the Superintendent to abandon such a debt or claim warrants the intervention of creditors by permission of the supervisory court.

It is said that Section 8938 of the Revised Code of 1919, as amended by Chapter 94 of the Session Laws of 1925, applies and bars the right of the creditors. We do not agree. This section provides: "No creditor of any individual bank, * * * shall be permitted to attach or seize under any warrant of attachment or execution, * * * any of the assets of the bank, until all depositors and creditors of such bank have been fully paids." The very evident purpose of this statute is to prevent a single creditor from securing a preference over the depositors as a whole. The suit proposed by plaintiff is for the benefit of all those interested in the trust who will join therein, and con not be construed as an attempt on the part of the plaintiff to secure a preference over depositors. From the inception of this suit the entire matter will remain within the control of the court, and it will adjust its decree to the equities of the situation.

It is said that plaintiff is a common creditor; that there can be no distribution to common creditors because of the depreciated value of the assets of the trust, and that therefore the Superintendent was justified in refusing to proceed at the behest of this particular creditor. Whatever there was of original force in the contention disappears when it is disclosed that although a secured creditor has joined with plaintiff, the Superintendent of Banks continues to resist the application.

Again, it is urged that it is futile to proceed because of the lapse of time and because the aggregate amount which equitably must be allowed to the Corporation to reimburse it for necessary disbursements made in enforcing and protecting collateral will offset any possible recovery. These are clearly matters of defense to be asserted by the Corporation and, in our opinion, can best be considered in connection with a plenary trial wherein both parties are afforded opportunity to fully develop the facts.

The collateral pledged as security for the loan of the Corporation was in excess of the amount permitted by the statutes

to which we have adverted. Because of such excessive pledge, a claim arose in favor of the Bank against the Corporation. That claim belongs to the Bank. The Superintendent of Banks proposes to abandon it. No showing is made indicating that the present interference of the creditors is untimely when viewed from the aspect of effective liquidation. The creditors offered to discharge the cost of litigation. No reason has been asserted or discovered which in our opinion justified the learned trial court in denying the creditors their day in court.

The order appealed from is reversed, and the court is directed to enter an order permitting the creditors to proceed in accordance with the views expressed herein.

All the Judges concur.