In re LIQUIDATION OF BADGER STATE BANK, Badger, S. D. HAUGO, Superintendent of Banks, Appellant, **v.** FEDERAL DEPOSIT INSURANCE CORP. OF WASHINGTON, D. C., Respondent.

FEDERAL DEPOSIT INSURANCE CORP. OF WASHINGTON, D. C., Appellant, v. HAUGO, Superintendent of Banks, Respondent.

(15 N. W.2d 744.)

(Files Nos. 8654 and 8659. Opinion filed August 23, 1944.)

**Warren & Eggen,** of De Smet, and **Odean Hareid** and **Danforth & Danforth,** all of Sioux Falls, for Erling Haugo.

**J. D. Coon,** of Sioux Falls, **Francis C. Brown,** of Washington, D. C., and **James M. Kane,** of Chicago, Ill. **(Robert M. Devitt,** of Canton, of counsel), for Federal Deposit. Ins. Corporation of Washington, D. C.

SMITH, J. The Badger State Bank suspended operations on August 3, 1940. Thereafter, between August 15 and November 27, 1940, the Federal Deposit Insurance Corporation satisfied the principal amount of the bank's insured deposits. When it appeared that a surplus might remain in the hands of the Superintendent of Banks after paying the expenses of liquidation and the claims of creditors, the F. D. I. C. made claim as the subrogee, or assignee, of depositors for interest on the aggregate amount of its payments from the date of the suspension of the bank. This claim was rejected by the Superintendent of Banks. The principal sum disbursed by the F. D. I. C. was paid pursuant to a stipulation that such payment might be received without prejudice to its claim for interest. Thereupon the F. D. I. C. petitioned the circuit court of the domicile of the bank for an order requiring the superintendent to allow its claim for interest. After hearing, pursuant to notice to all persons interested in the liquidation, the court entered an order requiring the superintendent to pay interest at the rate of 6% to the depositors on the amount of their respective deposits from the date of suspension to the date of payment by the F. D. I. C. and to pay like interest to the F. D. I. C. on an amount equal to each respective deposit from the date of such payment by the F. D. I. C. to the date of the above described repayment by the superintendent of its aggregate outlay. From this order the Superintendent of Banks and the F. D. I. C. have prosecuted separate appeals. The superintendent, on the one hand, by his principal assignments challenges the propriety of the allowance of interest in any sum, and the F. D. I. C., on the other hand, asserts that it is entitled to interest on its aggregate payments from the date of the suspension of the bank as the subrogee or assignee of the depositors. The two appeals have been presented and

considered together and will be disposed of by a single opinion.

By motion and by answer to the petition, the superintendent questioned the jurisdiction of the court. An appropriate assignment of error presents the adverse ruling of the court on that issue for review. The contention is that the sole remedy of the F. D. I. C. was to institute an action on its "rejected claim" within "three months after the completed service of notice of rejection" as provided by SDC 6.0611.

 The enactment of SDC 6.0610 and 6.0611 was obviously motivated by a legislative purpose to expedite liquidation by compelling the prompt assertion of the claims of creditors. In re State Bank of Manchester, 49 S. D. 102, 206 N. W. 231. The claims of depositors through which the right of the F. D. I. C. arises were so filed and allowed. The right of such a common creditor to claim interest during the period of liquidation, according to the overwhelming weight of authority, would not accrue until it could be established that a surplus would remain in the hands of the liquidator after discharging the expenses of liquidation and satisfying the principal amount of the claims of creditors. 9 C. J. S., Banks and Banking, 1011, § 527; State ex rel. McConnell v. Park Bank & T. Co., 151 Tenn. 195. 268 S. W. 638, 39 A. L. R. 457. If and when such a right should accrue, it would not arise as a claim peculiar to a particular creditor, but as a common incidental right of all creditors. Because the assertion of such a claim before it could be determined whether a surplus would eventuate would be pointless, and would not tend to further the legislative purpose to which we have adverted, we are persuaded that the legislature did not intend to subject such claims to the requirements of SDC 6.0610 and 6.0611. See Jones et al. v. Skinner, 159 Or. 325, 80 P.2d 60, and State ex rel. McConnell v. Park Bank & Trust Co., 151 Tenn. 195, 268 S. W. 638, 39 A. L. R. 449.

██ ██ This jurisdiction is committed to the view that an insolvent bank in liquidation is in custodia legis, and that in liquidating such an institution the Superintendent of Banks acts under the supervision of the circuit court of the county of the bank's domicile. That the circuit court had jurisdiction of the parties and the subject matter, and could

in the exercise of a sound discretion dispose of the issue summarily, we do not doubt. Hanson v. Sogn, 50 S. D. 44, 208 N. W. 228; In re Citizens' State Bank of Newark, 52 S. D. 466, 218 N. W. 630; Engelcke v. Farmers' State Bank, 61 S. D. 92, 246 N. W. 288; and Roundup School District No. 11 of Mellette County v. Agricultural Credit Corporation et al., 66 S. D. 186, 280 N. W. 659.

To reach the ultimate question presented by the superintendent under his principal contention, we develop additional facts, set forth underlying statutory provisions, and state conceded interpretations.

The bank in question is a state non-member bank as that term is defined by Federal Deposit Insurance Corporation Act. That Act provides, 12 U. S. C. A. § 264 (1) (7);

"In the case of a closed national bank or District bank, the Corporation, upon the payment of any depositor as provided in paragraph (6) of this subsection, shall be subrogated to all rights of the depositor against the closed bank to the extent of such payment. In the case of any other closed insured bank, the Corporation shall not make any payment to any depositor until the right of the Corporation to be subrogated to the rights of such depositor on the same basis as provided in the case of a closed national bank under this section shall have been recognized either by express provision of State law, by allowance of claims by the authority having supervision of such bank, by assignment of claims by depositors, or by any other effective method. * * * Provided further, That the rights of depositors and other creditors of any State Bank shall be determined in accordance with the applicable provisions of State law."

By SDC 6.0627 it is provided:

"Whenever the Federal Deposit Insurance Corporation shall pay, or make available for payment, the insured deposit liabilities of a closed state bank, said Corporation shall be and become subrogated by operation of law to all rights against such closed banking institution of each owner of a claim for deposit to the extent now or hereafter necessary to enable said Federal Deposit Insurance Corporation, under federal law, to make insurance payments available to depositors of closed insured banks."

The deposits here involved were of amounts of less than $5,000. As each depositor was paid the principal amount of his allowed claim by the F. D. I. C., he executed and delivered to it an assignment in writing reading in part as follows:

"For the purpose of subrogating the Federal Deposit Insurance Corporation to all of claimant's rights against said closed insured bank arising out of the Insured Deposit in the amount shown above, to the extent of the amount paid the receipt thereof (sic) is hereby acknowledged, claimant hereby assigns, transfers and sets over unto said Corporation all claims against said closed insured bank and its stockholders arising out of said insured deposit, together with all evidences of such indebtedness held by claimant."

Endorsed on these assignments appears: "Accepted by or on behalf of the Receiver: Erling Haugo, Superintendent of Banks."

■ Under the plain provisions of these statutes, and of the assignments, the F. D. I. C., upon making payment to the several depositors, became subrogated to whatever rights each respective depositor possessed against the bank under the laws of South Dakota. Federal Deposit Ins. Corporation v. Citizens State Bank of Niangua, 8 Cir., 130 F.2d 102; Wilhoit, Director of Banking, v. Federal Deposit Ins. Corp., 6 Cir., 143 F.2d 14; Federal Deposit Ins. Corporation v. Wilhoit et al., 297 Ky. 339, 180 S. W.2d 72; Bates v. Farmers Savings Bank of Ankeny, 231 Iowa 1151, 3 N. W.2d 517; In re Oconto State Bank, 241 Wis. 369, 6 N. W.2d 353, on rehearing, 241 Wis. 369, 7 N. W.2d 602.

■ The superintendent concedes the pro tanto right of the F. D. I. C. of subrogation to the rights of the depositor against the bank, but asserts as the principal ground for reversal that the depositors of this bank were without right to claim interest for the period of liquidation from the described surplus funds, and hence the F. D. I. C. is subrogated to no such right. In brief the argument is that under the authorities the allowance of interest in such a case is by way of damages for breach of contract, but that no such allowance can be made here because the contracts between the

bank and its depositors were not breached. It is said that the changes wrought by the cited statutes and the insurance of the deposits by the F. D. I. C. operated to change the terms of the contracts between the bank and its depositors. The superintendent points to the provisions of 12 U. S. C. A. § 264 (1) (6) requiring the F. D. I. C. to make payment as soon as possible; asserts that this provision enters into the contract of deposit; that the depositor has agreed to accept payment from the F. D. I. C. of the amount of his deposit "as soon as possible" in case of insolvency of the bank; that he has so been paid without the delay incident to liquidation; and that hence his deposit contract has not been breached and no damage has been suffered.

The fallacy in this argument, we think, rests in the assumption that these statutes deal with the underlying contracts of deposit. We perceive no such legislative intention. It seems obvious that the statutes leave the contractual relationships between the bank and its depositors untouched, and but invest the depositor with a separate and additional right against an insurer or indemnitor, the F. D. I. C., while providing, in turn, for the protection of that indemnitor through an express provision for its subrogation to all of the rights of the depositor under the contract of deposit. It is this express statutory provision for subrogation which keeps all of the claims of the depositors alive for the benefit of the F. D. I. C. notwithstanding the depositors have in fact been paid. To hold that payment by the F. D. I. C. operated to extinguish the interest bearing quality of the underlying claims as between the bank and the indemnitor would tend to defeat one of the obvious purposes of the legislature. We are persuaded that the contention is untenable.

In measuring the asserted rights of subrogation of the F. D. I. C., we are confronted with two questions of first impression in this state, viz.: (1) When the liquidation of a suspended bank produces a sum in excess of the principal amount of the claims of creditors and the expenses of liquidation, are the depositors entitled to interest on their deposits during the period of liquidation? and (2) if an affirmative answer must be made to the foregoing question, to what rate of interest are they entitled.

█ In treating with the subject of the right of creditors of an insolvent bank during the period of liquidation in 7 Am. Jur. 536, § 744, it is stated:

" * * * the general rule is that interest on general claims against an insolvent bank will not be computed for the period after the bank passes into the hands of a receiver or liquidator where the assets of the bank are not sufficient to pay the principal of all the debts. If, however, the assets of the insolvent bank do in fact turn out to be sufficient to meet all demands and leave a surplus over, interest on all claims will, in the absence of statutory prohibitions, be allowed out of the surplus to the creditors for the period during which the insolvent bank has been in the hands of the receiver or liquidator."

This is but a statement of the general rule applicable to the liquidation of all insolvents. 32 C. J. 884, § 178. It is supported by a wealth of authority. The cases are collected in the annotations in 39 A. L. R. 457 and 44 A. L. R. 1170.

Two quotations will reflect the reasoning of the courts.

In American Iron & Steel Mfg. Co. v. Seaboard Air Line Ry. et al., 233 U. S. 261, 34 S. Ct. 502, 504, 58 L. Ed. 949, it is written:

"And it is true * * * that as a general rule, after property of an insolvent is in custodia legis interest thereafter accruing is not allowed on debts payable out of the fund realized by a sale of the property. But that is not because the claims had lost their interest-bearing quality during that period, but is a necessary and enforced rule of distribution, due to the fact that in case of receiverships the assets are generally insufficient to pay debts in full. If all claims were of equal dignity and all bore the same rate of interest, from the date of the receivership to the date of final distribution, it would be immaterial whether the dividend was calculated on the basis of the principal alone or of principal and interest combined. But some of the debts might carry a high rate and some a low rate, and hence inequality would result in the payment of interest which accrued during the delay incident to collecting and distributing the funds. As this delay was the act of the law, no one should

thereby gain an advantage or suffer a loss. For that and like reasons, in case funds are not sufficient to pay claims of equal dignity, the distribution is made only on the basis of the principal of the debt. But that rule did not prevent the running of interest during the receivership; and if, as a result of good fortune or good management, the estate proved sufficient to discharge the claims in full, interest as well as principal should be paid."

The accepted reason for the allowance of interest on the claim of a demand depositor in the circumstances under consideration is well expressed by the writer in Ex parte Stockman, 70 S. C. 31, 48 S. E. 736, 106 Am. St. Rep. 741, as follows:

"The debt of the bank to a general depositor is payable on demand, the demand being usually in the form of a check. In the absence of express agreement, there is no interest on deposit accounts until demand and refusal. When, however, a bank permanently closes its doors—suspends payment—it expresses its inability and its refusal to pay depositors' checks. This is the recognized business method of indicating the futility of actually presenting the check or making demand in any other way for payment. When the bank thus expresses its refusal to pay any depositor, it would be useless to require each depositor to have the refusal repeated to him. The depositor is therefore entitled to interest from the date of suspension as damages for breach of the contract to pay his checks on presentation."

The statutes of South Dakota neither prohibit the allowance of interest in such circumstances nor do they by special provision direct such an allowance. It is provided by SDC 6.0630 that the superintendent shall pay all claims in full before recognizing the right of stockholders of a bank to resume control of its property. See Greva et al. v. Rainey, 2 Cal. 2d 338, 41 P. 2d 328. And statutes of general application provide for the allowance of interest as the measure of damages for the withholding of money. SDC 37.1802 and 38. 0103. We are convinced by reason and authority that the depositors of the bank in question had a rightful claim to interest on the amounts of their deposits from the described surplus funds during the period of liquidation and so hold.

■ The difficulty in resolving the issue as to the rate of interest arises from the fact that the depositors were not all of a kind. The right of the demand depositor to interest at the rate of 6% is clear for the reason that his contract of deposit did not provide for interest and hence the measure of his damage for breach of that contract arises under the statutes. SDC 38.0103, 38.0108, and 37.1802. The perplexing question arises in connection with the time and savings deposits bearing contractual rates. In support of the order of the trial court which applied the statutory rate to all deposits during the period of liquidation, the F. D. I. C presents two theories, exemplified by the authorities collected in State ex rel. McConnell v. Park Bank & T. Co., 151 Tenn. 195, 268 S. W. 638, 39 A. 'L. R. 457, supra. These points of view must receive separate consideration.

The first theory of the F. D. I. C. is stated in the much quoted language of the National Bank of Commonwealth of New York City v. Mechanics' Nat. Bank of Trenton, N. J., 94 U. S. 437, 438, 24 L. Ed. 176 at page 178, as follows:

"The fiftieth section of the National Banking Act, 13 Stat. 113, requires the comptroller of the currency to apply· the moneys paid over to him by the receiver 'on all such claims as may have been proved to his satisfaction, or adjudicated in a court of competent jurisdiction.' The act is silent as to interest upon the claims before or after proof or judgment. Can it be doubted that a judgment, if taken, would include interest down to the time of its rendition? * * *

"If these claims have been put in judgment, whether in a court of the United States or in a state court of that State, the result as to interest upon the judgment would have been the same. It was unnecessary to reduce them to judgment. because they were proved to the satisfaction of the comptroller. After they were so proved, they were of the same efficacy as judgments, and occupied the same legal ground. Hence, they are within the equity, if not the letter, of these statutes, and bear interest as judgments would have done. * * * * "

See State ex rel. McConnell v. Park Bank & Trust Co. et al., 151 Tenn. 195, 268 S. W. 638, 39 A. L. R. 449.

It is not clear to us that this principal case involved deposits bearing contractual rates, nor that the controlling state statutes were similar to those of this state. Our statutes provide: "Any legal rate of interest, stipulated by a contract, remains chargeable after a breach thereof, as before, until the contract is superseded by a verdict or other new obligation." SDC 38.0106; Hovey v. Edmison et al., 3 Dak. 449, 22 N. W. 594. Unless it can be soundly said that the allowance of a claim by the superintendent creates a new obligation which supersedes the contract of the parties, the contracts of the time and savings depositors measure their rights to interest. The statute SDC 6.0611 fails to reveal a legislative intention to alter the substantive rights of creditors. We concur in the views expressed by the Minnesota court in American Surety Co. of New York v. Peyton, 186 Minn. 588, 244 N. W. 74, 75, as follows:

"It is suggested that the legal rate of 6 per cent. (section 7036, Mason's Minn. St. 1927) should apply after the allowance of the claim by defendant as statutory liquidator. That we cannot do, because, under our statute, section 7689, Mason's Minn. St. 1927, providing for the liquidation of the state banks by the commissioner of banks and fixing the procedure to be followed, there is nothing in the way of a judgment of the court or an order amounting to a judgment of such a nature as to put an end to the liability on the contract and substitute therefor an obligation by judgment. It is not the court that allows the claims, but, rather and only, the commissioner of banks. 'Upon the expiration of the time fixed for the presentation of claims,' he makes a list of those presented, 'including and specifying such claims as have been rejected by him.' Then, in the absence of a contest over either rejected or allowed claims, he proceeds to pay dividends to the extent permitted by the available funds. In cases of doubt or conflicting claims, 'he may require an order of the district court authorizing and directing the payment of such claims.' We need not now consider whether such an order, if procured, amounts to a judgment which merges the original contract debt and so takes the legal rather than the contract rate of interest. In this case there has been no such order. At least there was none until the judgment from which this appeal

was taken. So we must hold that, inasmuch as the only obligation there was up to the entry of that judgment was of contract, the contract rate of interest applied to the exclusion of the legal rate. This follows, we think, because claims filed with the receiver do not lose their interest bearing quality during the receivership. Where all are of equal rank and interest is not allowed, the result is put upon the 'necessary and enforced rule of distribution, due to the fact that in case of receiverships the assets are generally insufficient to pay debts in full.' American Iron & Steel Mfg. Co. v. Seaboard Air Line Ry., 233 U. S. 261, 34 S. Ct. 502, 504, 58 L. Ed. 949. It was there pointed out that the general rule (already shown not to apply as against interest on preferred claims) did not prevent the running of interest during the receivership; and if, as a result of good fortune or good management, the estate proved sufficient to discharge the claims in full, interest (obviously at the contract rate) should be paid."

We have concluded that the second theory advanced by the F. D. I. C. on this phase of the case is equally unpersuasive. It is stated in the language of the leading case of People v. Merchants' Trust Co., 187 N. Y. 293, 79 N. E. 1004, at page 1006, as follows:

"After the receiver had taken possession of the assets of the company under such appointment, * * * the corporation became powerless to carry out its contracts with the depositors to repay their money to them upon demand. The depositors thereby had their right of withdrawal and payment taken from them. The company, owing to its inability to pay, became chargeable with a breach of its contracts, thus terminating its right under the existing contracts and investing its depositors with all the rights given by law to persons whose contracts have been broken. To continue the interest at the contract rate would be manifestly unjust to the creditors, for the rates allowed under the contracts varied, as we have seen, from 2 to 4 per cent., and it would, therefore, favor one class at the expense of the other. We think, therefore, that when the contracts with creditors were broken by the defendant becoming insolvent and the appointment of a receiver, so that it was unable to perform its agreements, the legal rate of interest became the rate to which all

the creditors were thereafter entitled, and it should be paid by the receivers if the assets are sufficient."

And see Federal Deposit Ins. Corporation v. Falk et al., 245 Wis. 245, 14 N. W.2d 3.

In a monograph entitled "Effect of Insolvency Proceedings on Creditor's Right to Interest" appearing in 32 Mich. Law Review, Judge Fred T. Hanson deals with this theory at page 1082:

"On the other hand, when the surplus is sufficient to pay in full the interest due to all the creditors, a difference in the rates provided by their contracts is not productive of any unjust inequality between them. The rights of one are in no way affected by the amount received by another. An amount equal to the principal is paid to each. Even where the surplus will not pay all the interest in full, no unjust inequality results from dividing it on the basis of different contract rates. The balance remaining due is proportioned to the compensation that each should receive for the use of his money. There is no injustice in computing the proportion of compensation to be received by each creditor on the basis of the rate of compensation for which he contracted. This is an entirely different matter than decreasing the proportion of principal to be received by one creditor by adding interest at a higher rate in computing the dividend of another."

And see Stein v. Delano et al., 3 Cir. 121 F. 2d 975 at page 978.

██ ██ Those who come into equity seeking distribution of an insolvent estate among its creditors invoke the ancient principle that "equality is equity." Pomeroy's Equity Jurisprudence, 5th Ed., § 410. We entertain the view, however, that this principle will not support a creditor in claiming more than is due under his contract. The order below allows a higher rate of interest than is provided by the time and savings contracts to which the F. D. I. C. is subrogated and in that respect it is erroneous.

██ The challenged order allows interest to the F. D. I. C. on its respective payments to depositors from the date of such payments. Premised upon the comprehensive terms of the controlling statutes quoted supra, the sweeping phrases

of the assignments, and authorities which hold that it is entitled to interest from the described surplus from the date of the bank's suspension, the F. D. I. C. asserts that interest should be computed from that date. The contention gains support from Bates v. Farmers Savings Bank of Ankeny, 231 Iowa 1151, 3 N. W.2d 517, and Federal Deposit Ins. Corporation v. Falk et al., 245 Wis. 245, 14 N. W.2d 3. We are in substantial agreement with the trial court.

Although the statutes speak in comprehensive terms of "all rights of the depositor," the revealed object of the legislation is but to reimburse the F. D. I. C. for its payments to depositors. Subrogation to the rights of the depositors is but the scheme adopted to accomplish that purpose. We fail to perceive a legislative purpose to enrich the F. D. I. C. When that institution regains its outlay with interest at the statutory rate from the dates of its respective payments it has been made whole, and we entertain the view that the statutes invest it with no greater right. Implicit in the words of the court in Federal Deposit Ins. Corporation v. Citizens State Bank of Niangua, 8 Cir., 130 F. 2d 102, at No. 6 page 104, in its footnote is an indication that the corporation is entitled to interest "for the period that its funds were outstanding."

The F. D. I. C. and the cited authorities place special emphasis upon its status as an assignee of "all claims against said closed insured bank." It seems obvious to us that the rights of the F. D. I. C. in its capacity as an assignee are neither greater nor different in this particular respect than its rights as a statutory or equitable subrogee. The parties to the assignment have used words too clear to require interpretation. The assignment recites the intention of the parties in the following words: "For the purpose of subrogating." Manifestly, the parties but sought to re-enforce the statutory status of the F. D. I. C. as a subrogree. See City of New Orleans v. Whitney, Adm'r, 138 U. S. 595, 11 S. Ct. 428, 34 L. Ed. 1102. The assignments as well as the statutes contemplate no more than the reimbursement of the F. D. I. C.

We hold that within the limits of the right to interest of each respective depositor to which the F. D. I. C. made pay-

ment, it is entitled to interest at six per cent, while its funds were outstanding.

The superintendent challenges that portion of the order which awards interest to the depositors from the date of the suspension of the bank until they were paid the principal amount of their claims. We have indicated that the statute, SDC 6.0627, contemplates the preservation of all of the rights of the depositors for the benefit of the F. D. I. C. This further contention requires us to determine whether, after receiving payment from the F. D. I. C., the depositors retained rights they can enforce after it has been reimbursed.

The argument is that the acceptance of the principal waived the depositor's claim for interest. We think the challenge to the order is justified in so far as it relates to the allowance to demand depositors. Again, however, the issue is complicated by the fact that the deposits are diverse in character.

■ ■ The applicable, well-settled principles have been thus expressed: "As a general rule, if interest is due by the terms of the contract, the payment of the principal is no bar to subsequent recovery, but if it is not due by the terms of the contract, the payment of the principal sum is a bar to the recovery." 30 Am. Jur. 14, § 12; 100 A. L. R. 96. Clearly the interest which became due to demand depositors upon breach of contract to pay on demand was by way of damages. Being a mere incident of the principal, the right to interest was extinguished by payment of the principal. Stewart v. Barnes, 153 U. S. 456, 14 S. Ct. 849, 38 L. Ed. 781.

We have not overlooked such cases as State ex rel. McConnell v. Park Bank & Trust Co. et al., 151 Tenn. 195, 268 S. W. 638, 39 A. L. R. 449, supra, which hold the foregoing principles inapplicable where a creditor has accepted dividends equal to the face of his claim during insolvency proceedings. We do not think the rule there announced should control in the circumstances at bar. The acceptance of payment of the principal as such from a third party insurer, as was done in the case at bar, is, in our opinion, quite different from the acceptance of dividends from time to time in the equal distribution of an undetermined fund among creditors.

As indicated by the foregoing statement of the controlling rule, a contrary conclusion is impelled as to the time and savings depositors. Their contracts provided for interest; the record does not reveal an accord and satisfaction of all of their claims; and hence, their interest claims were not extinguished. Whether the whole of their interest claims will be consumed in providing reimbursement to the F. D. I. C. is not revealed by the record, and is not determined.

A further contention of the superintendent remains for consideration. The petition alleges that the allowed claims include a claim of the Reconstruction Finance Corporation in the principal sum of $5,500 due on debentures of the bank. It asked that the claim of the F. D. I. C. for interest be paid before distribution is made to holders of debentures or to the bank's stockholders. This petition and order to show cause were served upon the Reconstruction Finance Corporation. That institution failed to appear and contest the petition. The trial below was limited to the issues we have heretofore considered and the briefs on appeal confined themselves to those issues and certain other points deemed not to merit discussion. At oral argument the superintendent sought permission to file an additional assignment of error, and now contends that the debentures constitute debts and must be paid in full before any interest is allowed to the F. D. I. C. The debentures in question are not in the record. Assuming that the superintendent accurately reflects their terms, his contention finds support in Federal Deposit Ins. Corporation v. Department of Financial Institutions, 113 Ind. App. 14, 44 N. E. 2d 992.

The argument of the superintendent recognizes the general principle that appellate review is limited to the theories presented below, but contends for an exception to that rule justifying the consideration of questions first raised on appeal affecting fundamental rights of the parties. 4 C. J. S., Appeal and Error, § 242, p. 485, and Id. § 1239, p. 1734. Conceding our power to consider fundamental questions first raised on appeal, we nevertheless have concluded, in view of the default of the Reconstruction Finance Corporation and the fac-

tual uncertainties with which we are confronted by the state of the record, that the instant circumstances do not furnish an occasion for the exercise of that power.

The cause is remanded with directions to harmonize the order of the learned trial court with this opinion and as so modified the order is affirmed, but without costs in this court.

POLLEY, ROBERTS, and RUDOLPH, JJ., concur.