D. W. BATES, Superintendent of Banking, Appellee, v. FARMERS SAVINGS BANK; FEDERAL DEPOSIT INSURANCE CORPORATION, Intervener, Cross-Appellant; V. C. ACCOLA et al., Interveners, Appellants.

No. 45845.

MAY 5, 1942.

Bump, Graeser, Shaw & Bump, for appellants.

Carr, Cox, Evans & Riley, John L. Cecil, and Francis C. Brown, for cross-appellant.

Robert D. Jackson, for appellee.

WENNERSTRUM, J.—This appeal has developed by reason of an application made by the superintendent of banking, as receiver of the Farmers Savings Bank of Ankeny, Iowa, in the receivership proceedings pertaining to that bank, for instructions and directions as to the distribution of the remaining assets of the receivership after all the creditors, including all depositors, have been paid the face value of their respective claims. The receiver particularly asked the court to determine whether or not the depositors should be paid interest on their deposit claims, or the remaining assets be distributed to the preferred stockholders of the bank. The court held that after the payment of all debts and general claims of the receivership the remaining assets should be used to pay interest on the preferred claims, the claims of depositors, and general claims against the bank, at the rate of 5 per cent per annum. The court further held that interest on these claims should be computed from the date or dates when such claims were allowed by order of court. The preferred stockholders of the bank, who had intervened in these proceedings, appealed from the order of the court allowing the interest on the depositors' claims and from the denial of their application that the surplus assets be distributed to them. The Federal Deposit Insurance Corporation, which had insured the deposits of the bank to the extent provided by the Federal Act, and who had also intervened in these proceedings, has appealed from the order of the trial court refusing to allow interest from the date of the closing of the bank rather than from the date of

the allowance of the claims of the Federal Deposit Insurance Corporation.

Issues before this court for determination may be summarized as follows: (1) Should the Federal Deposit Insurance Corporation (hereinafter referred to as the FDIC), as assignee and subrogee, and therefore successor in interest to the rights of the depositors whose insured deposits it had paid, be allowed interest from the date of the bank's closing; and, in this same connection, should interest be allowed to depositors whose individual claims exceeded the amount of the insured deposit from the date of the bank's closing; or (2) should the surplus in the hands of the receiver be distributed to the preferred stockholders?

The Farmers Savings Bank of Ankeny, Iowa (hereinafter referred to as the bank), was closed on May 19, 1938. Several years prior to the closing of this bank there had been a reorganization of the bank and a refinancing of its capital structure, and in this connection there was issued, and paid for in cash, $6,000 of preferred stock. This amount of preferred stock was outstanding at the time of the closing of the bank.

The record discloses, as previously stated, that the receiver has on hand a sufficient amount to pay all creditors, including the FDIC and the depositors whose deposits exceeded $5,000, the full amount of their claims. After the payment of all claims there will remain a surplus of approximately $3,384.84. The question as to the manner in which this surplus should be distributed has occasioned this litigation.

Certain of the provisions in the FDIC Act, 12 U. S. C. A. 496, section 264(1), paragraphs (6) and (7), are as follows:

"(6) Whenever an insured bank shall have been closed on account of inability to meet the demands of its depositors, payment of the insured deposits in such bank shall be made by the Corporation as soon as possible, subject to the provisions of paragraph (7) of this subsection, either (A) by making available to each depositor a transferred deposit in a new bank in the same community or in another insured bank in an amount equal to the insured deposit of such depositor and subject to withdrawal on demand, or (B) in such other manner as the board of direc-

tors may prescribe: *Provided,* That the Corporation, in its discretion, may require proof of claims to be filed before paying the insured deposits, and that in any case where the Corporation is not satisfied as to the validity of a claim for an insured deposit, it may require the final determination of a court of competent jurisdiction before paying such claim.

"(7) In the case of a closed national bank or District bank, the Corporation, upon the payment of any depositor as provided in paragraph (6) of this subsection, shall be subrogated to all rights of the depositor against the closed bank to the extent of such payment. In the case of any other closed insured bank, the Corporation shall not make any payment to any depositor until the right of the Corporation to be subrogated to the rights of such depositor on the same basis as provided in the case of a closed national bank under this section shall have been recognized either by express provision of State law, by allowance of claims by the authority having supervision of such bank, by assignment of claims by depositors, or by any other effective method. In the case of any closed insured bank, such subrogation shall include the right on the part of the Corporation to receive the same dividends from the proceeds of the assets of such closed bank and recoveries on account of stockholders' liability as would have been payable to the depositor on a claim for the insured deposit, but such depositor shall retain his claim for any uninsured portion of his deposit: *Provided,* That the rights of depositors and other creditors of any State bank shall be determined in accordance with the applicable provisions of State law."

In this connection it should also be noted that section 9283-g3, 1935 Code of Iowa, which was in force at the time of the closing of the bank, is as follows: .

"Whenever the federal deposit insurance corporation shall pay, or make available for payment, the insured deposit liabilities of any closed state bank, trust company, bank and trust company, banking association or stock savings bank, it shall be subrogated to all rights of the depositor to the extent of such payment. Such subrogation in the case of any closed state bank, trust company, bank and trust company, banking association or stock savings bank shall include the right to receive the same

dividends from the proceeds of the assets of said closed bank as would have been payable to such depositor on a claim for the insured deposit, such depositor retaining his claim for any uninsured portion of his deposit."

I. The particular question as to the right of the FDIC to receive interest on its claim, where a receivership has paid all claims in full, has not heretofore been before this court. We find, however, that we have heretofore given consideration to this problem in a general way in the case of Leach v. Sanborn State Bank, 210 Iowa 613, 615, 231 N. W. 497, 498, 69 A. L. R. 1206, where we said:

"Three rules governing the payment of interest on claims against receivers would seem to be in force generally in the Federal and state courts: (a) That interest will not be allowed on the claims of creditors (Hinrichs v. Higley & Co., 199 Iowa 765), *unless (b) the assets of the estate in the hands of such receiver are sufficient to pay all of the claims adjudicated against it, together with interest and costs of administration* (Hinrichs v. Higley & Co., supra); (c) * * *." (Italics supplied.)

In 9 C. J. S. 1011, section 527, the following statement is made:

"According to the rule which would seem to be more generally accepted in the state and federal courts, interest will not, in the absence of a statutory provision therefor, be allowed on claims of creditors of the bank *unless its assets in the hands of the receiver are sufficient to pay all of the claims adjudicated against it, * * *.*" (Italics supplied.)

In 7 Am. Jur. 536, section 744, Banks, in commenting upon the question now under consideration, the following statement is made:

"Accordingly, the general rule is that interest on general claims against an insolvent bank will not be computed for the period after the bank passes into the hands of a receiver or liquidator where the assets of the bank are not sufficient to pay the principal of all the debts. If, however, the assets of the insolvent bank do in fact turn out to be sufficient to meet all

**1156**

demands and leave a surplus over, interest on all claims will, in the absence of a statutory prohibition, be allowed out of the surplus to the creditors for the period during which the insolvent bank has been in the hands of the receiver or liquidator."

Extensive notes and comments holding to the same effect are found in the Annotations noted in 39 A. L. R., at page 457, and 44 A. L. R., at page 1170. Innumerable later cases found in supplemental citations to these last-referred-to annotations have held to this same effect. The rule seems to be generally established that where a receivership of a bank pays out in full interest should be allowed on the depositors' claims, and the citation of these later authorities does not appear necessary.

II. The provision for the payment of interest under a circumstance such as is now before the court is covered by section 9404 of the 1939 Code of Iowa which was in effect at the time the bank was closed and it reads as follows:

"Rate of interest. The rate of interest shall be five cents on the hundred by the year in the following cases, unless the parties shall agree in writing for the payment of interest not exceeding seven cents on the hundred by the year: * * *
"2. Money after the same becomes due. * * *"

The effect of the insolvency of a bank in relation to its depositors is commented upon in the following authority. In 7 Am. Jur. 287, section 407, Banks, it is stated:

"The effect of the suspension and declared insolvency of a bank is to make its deposits due and actionable, and a depositor then becomes entitled to interest on his deposits from the date of such suspension and declared insolvency. The rate of interest recoverable in such a case is the legal rate, and a recovery is not limited to the amount which the bank was accustomed to pay on time deposits."

By reason of the authorities heretofore noted and the cases cited therein, it is our judgment and holding that, by reason of the receivership of the Farmers Savings Bank, the deposit became due and actionable, and consequently, the depositor is entitled to interest on his deposit from the date of the suspension of operation and declared insolvency of the bank.

■ III. A further matter which necessitates consideration in connection with the problem before us is the question as to the respective rights of the creditors represented by the depositor-claimants in general, preferred claimants, and the stockholders. It is our judgment that there cannot be any question that the first responsibility and duty of the receiver in this case is to pay the depositor-claimants in full, including interest, before there can be any payments to the stockholders. As previously noted, under circumstances such as are found in this case, the claim of the depositor-creditors includes interest from the time when the deposit liability became due. This liability developed when the bank suspended payment of its deposit obligations. These liabilities should be paid before payment of any of the surplus to the stockholders. In the case of Tulsa Bldg. & L. Assn. v. Leonard, 188 Okla. 562, 564, 112 P. 2d 363, 365, we find the following statement which supports our holding:

"But, as to the ordinary creditor, the investments of the stockholders are not to be considered in the liquidation of claims. Under the receivership the claims of the ordinary creditor are superior to the claims of the stockholders. In applying the above rule for the calculation of interest and the collection thereof beyond the date of receivership the principal question is whether there are sufficient assets to pay all creditors' claims in full, without regard to the investment claims of the stockholders."

In American Iron & Steel Mfg. Co. v. Seaboard Air Line Ry. Co., 233 U. S. 261, 267, 34 S. Ct. 502, 505, 58 L. Ed. 949, 954, we find this statement:

"The principle is not limited to cases of technical bankruptcy, where the assets ultimately prove sufficient to pay all debts in full but principal as well as interest, accruing during a receivership, is paid on debts of the highest dignity, even though what remains is not sufficient to pay claims of a lower rank in full." (Citing cases.)

In People v. American Loan & Tr. Co., 172 N. Y. 371, 379, 65 N. E. 200, 201, this statement is made:

"If the assets are sufficient to pay all, including interest,

it must be paid, for as against the corporation itself interest should be allowed before the return of any surplus to the stock-holders.''

We therefore hold that the claims of the depositors which have been assigned to the FDIC are superior to the rights of any stockholders until said depositor-claimants have been paid in full. And payment in full in this case includes interest from the date of insolvency to the date of payment.

█ IV. It is the contention of the appellants that, inas-much as the FDIC is a creature of the Federal Government and the federal statutes relative to that corporation do not provide for interest on funds which it pays to depositors of closed banks, no interest should be recovered in the present case where there is a surplus in the receivership after the payment of all claims.

In answer to this contention we need only to consider the question as though all the depositors' claims were held by in-dividuals. Upon the authorities previously cited it is established that these depositors would be entitled to the payment of interest on their claims from the date of the insolvency of the bank. We do not see why the FDIC should be considered on any other basis. In making payment to the original individual depositors the FDIC obtained an assignment of the deposit claims in keeping with the provisions of the federal and state statutes heretofore set out. This assignment in part provided:

''* * * claimant hereby assigns, transfers and sets over unto said Corporation all claims against said closed insured bank and its stockholders arising out of said insured deposit, together with all evidence of such indebtedness held by claimant.''

It will be observed that the assignment provided for the transfer to the corporation of ''all claims against said closed bank.'' A right attendant to the claims against a closed bank where the claims can be paid in full is to have interest on the claim from the time of insolvency to the time of payment. The fact that the FDIC is a governmental agency whose entire stock has been provided by the Federal Government does not, in our judgment, make any difference. And particularly is this true by reason of the provisions of the federal and state statutes

relative to their rights under an assignment. The fact that the FDIC was created for the purpose of stabilizing banking institutions of the nation is not, in our judgment, a sufficient reason to say that the rules heretofore announced and held sound in connection with claims against closed banks generally should not apply to a corporation sponsored by the government.

We have been cited to the following cases by the appellants: Federal Deposit Ins. Corp. v. Casady, 106 F. 2d 784; Doherty v. United States, 94 F. 2d 495; United States v. Goltra, 312 U. S. 203, 61 S. Ct. 487, 85 L. Ed. 776; Boston Sand Co. v. United States, 278 U. S. 41, 49 S. Ct. 52, 73 L. Ed. 170. We have given consideration to these authorities but we do not see the applicability of the statements therein made to the question before us. In these particular cases the facts are not the same as in the present case and the same statute is not involved. In the case of the Federal Deposit Insurance Corporation v. Casady, supra, the court held that inasmuch as the corporation was a governmental agency costs should neither be awarded in its favor nor against it. The case of Doherty v. United States, supra, involves a criminal action wherein an employee of a bank insured under the Federal Deposit Insurance Corporation act was found guilty of the violation of certain provisions of that act. The case of United States v. Goltra, supra, was a case appealed from the judgment of a court of claims allowing interest on damages for the wrongful taking of certain property by representatives of the government. The United States appealed, and it was held that the government is immune from the burden of interest unless it was specifically agreed upon by contract or imposed by legislation. The case of Boston Sand Co. v. United States, supra, involved an action brought against the United States as the result of a collision between a vessel owned by the plaintiff and a United States destroyer. It was there held that interest should not be allowed in a recovery against the United States.

By reason of our pronouncements and holdings heretofore made, it is our conclusion that: (1) All depositors, and the FDIC as assignee of depositors' claims, are entitled to interest at 5 per cent on such claims from the date of the bank's insolvency as evidenced by the date of the closing of the bank; (2)

the payment of interest to depositor-claimants, including the FDIC shall have priority in payment before any distribution is made to the preferred stockholders.

On the appellants' appeal we affirm. By reason of the fact that the trial court allowed interest to the FDIC only from the date of the filing of its claims rather than from the date of the closing of the bank, we are compelled to reverse on cross-appellant's appeal. We also remand these proceedings to the district court for an entry in the receivership of an order in keeping with our holdings herein announced.—Affirmed on appellants' appeal; reversed on cross-appellant's appeal, and remanded.

All JUSTICES concur.