# Wood v. Wilhoit, Banking & Securities Com'r, et al.

June 16, 1942.

·O. B. Bertram for appellant.

A. E. Funk, Assistant Attorney General, and Philip Bertram for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The Bank of Campbellsville closed its doors June 5, 1939, and its assets were turned over to the State Banking & Securities Commissioner who designated W. W. Webster, Special Deputy Director, to liquidate the bank. On October 16, 1941, after six dividends, totaling 60%, had been paid, the Special Deputy Director notified creditors of the bank that a seventh dividend of 7% would be paid October 27, 1941. It was stated in the notice that a final distribution of 8% or 10% would be made before January 1, 1942. On October 18, 1941, W. E. Wood brought this action against Hiram Wilhoit, Banking & Securities Commissioner, and W. W. Webster, Special Deputy Director, in which he sought to be adjudged a common creditor of the Bank of Campbellsville and entitled to be paid the same pro rata part of his claim of $10,000 as had theretofore been, or would thereafter be paid to other creditors of the bank, and he asked that the defendants be enjoined from making any further distribution of the assets of the bank until the matters involved in his suit had been fully adjudicated. After several amended petitions had been filed, the court sustained a demurrer to the petition as amended and dismissed the action. Plaintiff has appealed.

In the petition and the amendments thereto the plaintiff alleged, in substance, that at all times since January, 1935, J. N. Turner, George R. Turner, and Henry R. Turner, Jr., constituted the board of directors and were the owners of all capital stock of the bank except 6 shares; that J. N. Turner was president of the board of directors, George R. Turner was cashier, and Henry R. Turner, Jr., was assistant cashier, and that these three officers had full and complete control of the affairs of the bank; that on several occasions they had made efforts to obtain insurance of the deposits in the bank, but had been unable to do so; that during the month of February, 1938, Henry R. Turner, Jr., wrote the appellant that the bank was being examined by the Federal Deposit Insurance Corporation, and that in or-

der for the bank to obtain insurance of its deposits it would be necessary for it to increase its assets in the amount of $20,000 and requested the appellant to furnish the sum of $10,000, that arrangements for the additional $10,000 could be made; that in order to keep the transaction from appearing on the bank records as an obligation of the bank he, Henry R. Turner, Jr., and the other officers of the bank would pay off the loan within a short time. Plaintiff further alleged that he mailed to Henry Turner, Jr., a check payable to Turner for the sum of $10,000 which was deposited to Turner's credit in the Citizens Union National Bank in Louisville and that Turner then gave his check for $9,500 to the Bank of Campbellsville, which was charged to his account in the Citizens Union National Bank; that $9,500 of the money furnished by plaintiff was deposited to the credit of the Bank of Campbellsville in the Citizens Union National Bank, and constituted part of the assets of the Bank of Campbellsville at the time its assets were turned over to the State Banking & Securities Commissioner on June 5, 1939; that he was assured by the officers and directors of the Bank of Campbellsville that if he would furnish $10,000 for the purpose of augmenting the assets of the bank, insurance of its deposits by the Federal Deposit Insurance Corporation would be obtained, but the insurance was not obtained and he was not advised of the financial status of the bank at the time he furnished the money or at any time thereafter until the bank ceased doing business; that the statements and representations made to him by the officers of the bank to the effect that the money advanced by him was to be used for the sole purpose of increasing the assets of the bank in order to enable it to obtain insurance of its deposits were false and fraudulent; and that they were obtained for the purpose of enabling the bank to continue in business and not for the purpose of obtaining insurance of its deposits.

There can be no quarrel with appellant's contention or the authorities cited by him in support thereof that a bank is liable for fraud practiced by its officer in borrowing money for the bank where such a transaction is within the apparent scope of his authority, and that a bank ordinarily is liable for funds appropriated by it to its use and benefit. The substance of the petition as amended is that appellant loaned to Henry R. Turner, Jr., $10,000 and Turner executed and delivered his note for that amount to appellant and then gave to the bank

his check for $9,500 and thus augmented the assets of the bank to that extent. Appellant understood that the transaction was not to appear on the books of the bank, and that it was necessary to augment the bank's assets in the sum of $20,000 in order to enable it to obtain insurance of its deposits by the Federal Deposit Insurance Corporation. The insurance was not obtained although the bank's assets were augmented, and appellant now argues that a fraud was practiced upon him by an officer of the bank and that the real purpose of the loan was to augment the assets of the bank because its capital was impaired, a fact of which he was ignorant. Appellant, in his petition, set out in full a letter to him from Henry R. Turner, Jr., in which the writer said:

"In so far as we can learn FDIC wants us to apply for membership and we are assured by word of mouth through a third person that we will be admitted. However, this is not definite, nor will any of them put it in writing."

The mere fact that the Federal Deposit Insurance Corporation was insisting that the bank's assets be augmented by the sum of $20,000 before it would consider the insurance of its deposits was notice to appellant that the bank was in financial difficulty, and that its capital probably was impaired.

After the bank's book assets were increased by the loans of appellant and another in February, 1938, the bank continued to transact business for more than fifteen months and accounts were opened with new depositors and many old depositors were induced, no doubt, to continue as such by reason of the bank's apparent solvency. Appellant made the loan and took the personal note of an officer of the bank knowing that the check executed by him to the officer would be cashed and the proceeds used to increase the assets of the bank, and that no entry would be made on its books showing a corresponding increase of liabilities. The rule is that directors and stockholders are liable on notes and other obligations given to keep banks open, and are estopped from setting up as a defense lack of consideration. Union Bank v. Sullivan, 214 N. Y. 332, 108 N. E. 558. The same rule applies where the obligation is made by one not a director or stockholder, Pauly v. O'Brien, C. C., 69 F. 460, and also where money is deposited to increase the apparent assets of the bank and prevent its closing, Fallgatter v. Citi-

zens' National Bank, D. C., 11 F. (2d) 383. On this aspect of the case the chancellor, in a well-considered opinion, said:

> "Plaintiff having participated in this transaction with the officers of the bank, is, as we see it, in no better position than the bank's officers would have been had they furnished the money out of their own funds. Anyhow, after the lapse of this time and after the bank has gone into receivership, we think plaintiff is estopped to assert his claim as against the depositors and creditors of the bank."

The appellant is entitled to be paid his $10,000 loan before anything is distributed to the stockholders, but this phase of the matter is academic since the record discloses that the creditors will not be paid in full and nothing will be left for the stockholders.

The judgment is affirmed.