## Federal Deposit Ins. Corporation v. Wilhoit, Director of Banking, et al.

Dec. 17, 1943.

Francis C. Brown, John L. Cecil and L. S. Shepler for appellant.

Dysard & Dysard, H. L. Woods, E. L. Zeigler and Y. E. Kennard for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

The question is whether the Federal Deposit Insurance Corporation is entitled to interest on money it made available to depositors of a closed bank until it was reimbursed that sum from the assets, there remaining a relatively small amount after all the bank's creditors had been paid.

The Federal Deposit Insurance Corporation, which, following the practice of the day, we may call the FDIC, had insured the deposits of the Carter County Commercial Bank of Olive Hill, Kentucky, which suspended operations on October 30, 1937, and was taken over for liquidation by the Banking and Securities Commissioner of Kentucky. The Commissioner and a special deputy constituted statutory receivers. Sec. 165a-16 et seq., Kentucky Statutes, now KRS 287.560 et seq. The Insurance Corporation satisfied the depositors, no one of whom had more than $5,000 on deposit. It seems, however, some of them were not paid for almost a year, which was perhaps because of set-offs, the reason for the delay not appearing in the record. They were paid no interest. The aggregate paid the depositors was $95,425.48. The FDIC's claim for this sum was allowed. Two months after the bank closed it was reimbursed $60,687.36 and the balance in four installments, the last about four years afterward. The FDIC made a further claim and demand of $7,924.03 for interest on the balances. Subject to judicial action on claims of two directors, who substantially owned the bank, for reimbursement of money advanced by them to restore impaired capital or surplus while the institution was doing business several years before it was closed, which claims had been disallowed by the receiver, there remained for distribution among the stockholders the sum of $3,285.58. The receiver did not allow any of these claims but referred them to the court, which adjudged the claims of the directors to be valid and payable but denied the claim for interest. The question is whether the balance of $3,285.58, less subsequently accrued expenses, shall go to the Insurance Corporation as interest or to the satisfaction of these claims.

The act of Congress governing the operation of the Federal Deposit Insurance Corporation (12 U. S. C. A. Sec. 264), especially that part defining its rights and

duties respecting the satisfaction of depositors and subrogation, Sec. 264, (1) (7) provides "that the rights of depositors and other creditors of any State bank shall be determined in accordance with the applicable provisions of State law." We regard this provision as relating to state law not in conflict with the express provisions and limitations of the Federal Act. Cf. Pufahl v. Parks' Estate, 299 U. S. 217, 57 S. Ct. 151, 81 L. Ed. 133.

When an insured bank shall have been closed on account of inability to meet the demands of its depositors, the FDIC makes available to each of them a transferred deposit in another bank which is subject to withdrawal upon demand, or pays them in some manner as may be prescribed by the directors of the corporation. 12 U. S. C. A. Sec. 264 (1) (6). In the case of a closed National Bank, upon payment to any depositor as thus provided, the FDIC "is subrogated to all rights of the depositor against the closed bank to the extent of such payment." In the case of a closed State bank no payment will be made until the right of subrogation on the same basis shall have been recognized by the state law, by allowance of the authority having supervision of the bank, by assignment of claims by the depositors, or some other effective method. 12 U. S. C. A. Sec. 264, (1) (7). To meet this provision, Kentucky, like other States, has enacted a statute providing that when the FDIC shall pay or make payment available to depositors of a state bank, "the corporation shall become subrogated by operation of law to all rights against the closed banking institution of each owner of a claim for deposit to the extent of the payment." KRS 287.320. The Corporation took an assignment and receipt from each depositor of the Carter County Commercial Bank of Olive Hill, in the following form:

"For the purpose of subrogating the Federal Deposit Insurance Corporation to all of claimant's rights against said closed insured bank arising out of the insured deposit in the amount shown above, claimant hereby assigns, transfers and sets over unto said Corporation all claims against said closed bank and its stockholders arising out of said insured deposit, together with all evidences of such indebtedness held by claimant."

The statutes and this assignment constitute the entire contract and basis for the claim and cause of action

so far as this record reveals. If there was any instrument executed by the Corporation and Bank to evidence their reciprocal agreements and obligations it is not here.

We look first to the few cases in which the question at bar has been considered.

In Bates v. Farmers Savings Bank of Ankeny, 231 Iowa 1151, 3 N. W. (2d) 517, the opinion is expressed that the Federal Deposit Insurance Corporation and its subrogated claims should be considered on the basis of an individual assignee, the fact that it is a creature of the government making no difference. The court quoted a statute of Iowa providing for the payment of interest on "money after the same becomes due," Code 1939, Sec. 9404, and decided that the FDIC was entitled to interest on the deposits from the date the bank closed its doors in preference to a distribution among the stockholders.

The FDIC made similar claim for interest against the assets of a Missouri state bank. Missouri has a statute like Iowa's, providing for the payment of interest on open accounts "after they become due and demand of payment is made." Section 3226, R. S. Missouri 1939, Mo. R. S. A. Sec. 3226. The courts of that state, in accordance with the weight of authority, hold that depositors in a closed banking institution are entitled to interest where there is a sufficiency of assets after satisfaction of other debts in preference to the claims of stockholders. The District Court of the United States for the Western District of Missouri held that the FDIC would have been entitled to collect interest in subrogation of the depositors whom it had satisfied if its claim therefor had been seasonably made, but that not having been done it was limited to interest from the date the statutory receiver had formally approved the claim for reimbursement of the principal. Federal Deposit Insurance Corporation v. Citizens State Bank of Niangua, 40 F. Supp. 805. On appeal it was held in an opinion of the same style, 130 F. (2d) 102, 103, that the claim had been timely asserted while the bank was in process of liquidation, and as that proceeding was pending in the state court the question of the Corporation's right to interest was a matter to be determined by the Missouri court and not by the Federal Courts in a declaratory judgment action, except in so far as it

involved the Corporation's right under Federal law. The court considered the argument, which is also made in the case at bar, that the provision of the Federal statute Sec. 264 (1) (7) that the corporation "shall be subrogated to all rights of the depositor against the closed bank *to the extent of such payment*" (italics added) prohibits the corporation from receiving interest as an incident of the debt and entitles it to reimbursement only for the sum which it has paid out. The court responded:

"We regard this as a strained and unreasonable construction. The expression 'to the extent of such payment' is equivalent here to the term 'pro tanto,' or to the words 'as to the portion of the deposit paid.' The language of the statute in no way restricts the scope of the Corporation's pro tanto subrogation rights, but, on the contrary, it expressly provided that, to the extent of the payment made, or as to the portion of the deposit paid, the Corporation shall be entitled to 'all rights of the depositor against the closed bank.' This obviously includes the usual and inherent incident of interest for the period that the bank's obligation for the deposit remains unsatisfied as against the Corporation, if a surplus is available for that purpose. It must accordingly be declared and held that the Federal Deposit Insurance Corporation Act does not prohibit the Corporation from receiving interest upon its claim against a closed bank for the portion of the deposits which it has paid, but contemplates that the Corporation shall be entitled to collect, as part of its subrogation rights, such interest as is properly and ordinarily incident to the payment of claims of depositors in a bank liquidation, where there is a surplus available for this purpose."

It, therefore, appears that the Circuit Court of Appeals decided only that the phrase authorizing subrogation "to the extent of such payment" did not prohibit the Insurance Corporation from receiving interest. It made no reference to the Missouri statute requiring it. So it would seem that the court relegated the question and the right to recover to the affirmative State law.

In Federal Deposit Insurance Corporation v. Leggett, 204 Ark. 780, 164 S. W. (2d) 882, the view was stated that irrespective of the assignment of the depositors, the Insurance Corporation was subrogated to their

right to collect interest on the amount of their deposits after the bank closed. The court merely expressed the opinion that the decisions in the cases from Iowa and the United States Circuit Court of Appeals, supra, properly construed the purpose and intent of the statute and adopted that construction. It does not appear that there was an Arkansas statute requiring the payment of interest upon money after it becomes due as there is in Iowa.

In all three of the cases the obligation to pay interest when money was due and demand refused was embraced in State statutes, which under familiar law, constituted parts of all contracts. We do not have a similar statute in Kentucky. But this court has held that demand depositors are entitled to interest from the time a bank suspended business. The decision is rested upon the proposition that an ordinary deposit subject to check is in the nature of a loan to the bank, with an implied contract to pay the depositor upon demand, and that the suspension of business is in effect a breach of the contract and the equivalent of a refusal to pay. Dorman v. Adams, 247 Ky. 678, 57 S. W. (2d) 534. It was not necessary in that case to decide that interest was allowable only when the assets in the hands of the receiver were sufficient to pay all the demands and claims against the bank and leave a surplus for the stockholders, which is the general ruling. 7 Am. Jur., Banks, Sec. 744; 9 C. J. S., Banks and Banking, Sec. 527; 3 Zollman, Banks and Banking, Perm. Ed., Sec. 1781; Michie, Banks and Banking, Secs. 96, 219. An interesting, analytical opinion on the subject is Stein v. Delano, 3 Cir., 121 F. (2d) 975.

In Federal Deposit Ins. Corp. v. Department of Financial Institutions, Ind. App., 44 N. E. (2d) 992, there was a conflict between a claim of the Insurance Corporation and the Reconstruction Finance Corporation. The question was whether the RFC was a stockholder or a creditor. The appellate court concluded that by virtue of the instrument issued to it the RFC did not occupy the status of a stockholder but of a creditor subordinate to the bank's depositors and others of its creditors, its rights however being superior to the stockholders. Accordingly the claim of the FDIC that it was entitled to interest out of the proceeds of the assets remaining after every one else had been paid but the RFC and stockholders was denied.

In a footnote to Federal Deposit Insurance Corporation v. Citizens State Bank of Niangua 8, Cir., 130 F. (2d) 102, supra, the court observed that there is nothing in the purpose of the act or in the legislative history to evidence any philanthropic intent to allow the use of the corporation's funds to become a source of profit to the stockholders; that the corporation is an instrumentality of the United States, with certain governmental privileges, and derives its insurance fund in part from the government and from the assessment of all qualifying banks; that the public is interested in the preservation of the corporation's solvency because it was designed to promote stability to the banking system through protection of deposits.

The Corporation committed itself to pay the depositors and when it did so, the Bank's obligation to them was discharged and only its obligation to the Corporation remained. The question is resolved into one of construction of the contract of indemnifying insurance, particularly as to the meaning and extent of the word "subrogated," to be found in the terms of the federal act, measured by the rules established by the decisions of this court.

A point is made by the appellees that the Federal Act provides that the board of directors of the corporation by regulation shall prohibit the payment of interest on demand deposits in insured bank and shall limit the rate of interest on time and savings deposits. 12 U. S. C. A. Sec. 264 (v) (8). It is not controverted that the operation of the statute denied the right of the Carter County Commercial Bank and its demand depositors to have entered into a contract for the payment of interest before the bank closed its doors. The Circuit Court expressed the opinion that since a depositor could not collect interest upon a refusal of his demand while the bank is in operation, the theory upon which it is allowable after it ceased operation is destroyed.

The reasons for the prohibition of paying interest on demand deposits in the ordinary course of business was for the benefit of the general depositors and Insurance Corporation by preventing competition among banks for deposits which might prove embarrassing or dangerous. We do not think the statute or regulation applicable where there was a definite breach of the contract.

It seems to us that the language of the statutes and the assignments from the depositors that the FDIC "shall be subrogated to all rights of the depositor" whom it has paid "to the extent of such payment," and that such subrogation "shall include the right on the part of the Corporation to receive the same dividends from the proceeds of the assets of such closed bank and recoveries on account of stockholders' liability as would have been payable to the depositor on a claim for the insured deposit" (the Federal Statute, 12 U. S. C. A. Sec. 264(l) (7), and "to all rights * * * to the extent of the payment" (the State Statute, KRS 287.320), as well as the language of the depositors' assignments, is as broad as it could have been made without tautology or improper superlatives. The word "subrogation" simply means substitution for another. It is the legal operation by which a third person who pays a creditor succeeds to his rights against a debtor. It may be subject to limitation by appropriate language, such as partially or pro tanto, but to attempt to expand it to a higher degree would be to attempt to make more complete that which is itself complete. True, the phrase "to the extent of the payment" permits the implication that there could be no more recovered by the Insurance Corporation than the sum it actually paid to the depositors; but we think, as other courts have thought, it was so expressed to change the previous temporary statute, which subrogated the FDIC to the full deposit, requiring that it be reimbursed entirely before the depositor should receive anything on a deposit in excess of the amount insured, and to provide a ratable right. In re Liquidation of Anchor State Bank, 234 Wis. 261, 291 N. W. 329; Withers v. D'Auria Bank & Trust Company, 122 N. J. Eq. 503, 195 A. 298. This was intended to carry the idea, for example, that if a depositor had $6,500 on deposit the FDIC should pay him $5,000 and be subrogated to his rights to that extent and leave the depositor his original rights in relation to the balance of $1,500. It could not be gainsaid that in such a case he would be entitled to recover $1,500 plus interest if the assets of the bank proved sufficient. To the same extent the Insurance Corporation would be entitled to recover $5,000 plus interest. If this were not so, the Corporation would not be subrogated "to all rights" of the depositor nor be permitted to receive the same dividends. The law, as we have stated, implies a prom-

ise to pay interest upon the refusal of a bank to pay a demand deposit just as much to the one as to the other. Under the applicable statutes and similar assignments by depositors, we have held the FDIC entitled to enforce the payment of individual double liability of stockholders in its favor as subrogee of the depositors. Taylor v. Dorman, State Banking & Securities Commissioner, 279 Ky. 109, 129 S. W. (2d) 1019.

It is true that the equitable doctrine of subrogation is enforced solely for the purpose of accomplishing the ends of substantial justice and that there is no inexorable rule by which the right is to be measured. So a court of equity may cut down or lessen rights of the subrogee, as by denying interest, or may even bar subrogation altogether. However, generally the subrogee is placed in the shoes or in the precise position of one to whose rights he is subrogated and is entitled to all legal rights and remedies available to the creditor. 25 R. C. L. 1377. So where one obligated to do so pays a debt bearing interest he is entitled to receive both principal and interest until he shall be satisfied and may enforce any lien securing the debt to that extent. 25 R. C. L. 1389. Here the subrogation is accomplished by express statutes and definite writings of assignment. These define the terms, conditions and extent of the subrogation, which is, as we have reasoned, complete or entire. In such a case a court of equity will determine the rights of the parties by the contract, enforce the agreement and give the second or substituted creditor what he has contracted for. 25 R. C. L. 1339; In re Liquidation of Anchor State Bank, supra; Withers v. D'Auria Bank & Trust Company, supra; Bates v. Farmers Savings Bank of Ankeny, 231 Iowa 1151, 3 N. W. (2d) 517.

The Insurance Corporation, therefore, is entitled to recover interest to the amount of the undistributed assets of the closed bank unless it is estopped to claim priority over the claims of the directors for money placed in the capital account of the bank, as the Circuit Court ruled.

Sometime in 1927, because of the defalcation of the cashier of the Carter County Commercial Bank, its capital was much impaired and the Banking Commissioner of the state required that it be restored to the legal reserve or amount. A. J. Stamper and his brother,

G. W. Stamper, who together owned 253 shares of stock, which constituted a large majority of it, voluntarily placed $25,300 to the surplus account to augment its assets and keep it from closing. They were the president and vice president of the bank, respectively, as well as directors and stockholders. The Banking Commissioner was authorized by statute, Sec. 165a-15, to require stockholders to make good any impairment of the capital stock as a condition to remaining open. At that time the Kentucky Statutes, Sec. 595, imposed double liability upon the stockholders of a bank to prevent loss to its creditors. In February, 1929, a resolution was adopted by the board of directors, of which entry was then made on their minute book, reciting the payment by the Stampers and declaring that they should be repaid by the bank, "with the approval of the State Banking examiners."

Several years later, a banking examiner having disallowed certain notes as proper assets, A. J. Stamper paid the amounts to the bank, "with the knowledge, consent and direction of the stockholders," and accepted personal assignment of the notes, which were never paid. His estate claimed the right to recover $2,160 on this account from the assets of the closed bank.

No objection to the allowance of these claims was made by any one except the Federal Deposit Insurance Corporation. The trial court was of opinion that they were valid claims and that by reason of the entry on the minute book of the bank's directors revealing the indebtedness of $25,300 to the Stampers, made three years before the FDIC examined the bank and elected to insure the deposits, it was estopped to question the claims as prior liabilities. The court thought that since the Corporation could have declined to insure the deposits but elected to do so for a valuable consideration without demanding as a condition or prerequisite that the claim should be abandoned or cancelled, it can not now claim any priority over those creditors.

The restoration of deficient capital of a bank by those interested in its continuance is in the nature of a reinvestment in the stock for the purpose of strengthening or replacing the impairment. It is incident to the operation of a going concern and is distinguishable from superadded liability imposed by a statute because that becomes effective only after liquidation has begun. Whit-

field v. Dorman, 249 Ky. 634, 61 S. W. (2d) 280; 3 Zollman, Banks & Banking, Perm. Ed., Sec. 1873; 7 Am. Jur., Banks, Sec. 103. Clearly, the assessment or voluntary restoration of impaired capital, or advancement of money to aid a bank in financial difficulties, is for the benefit of the creditors of the bank, particularly the depositors. The money thus placed in the business becomes free assets, to be used in future operations of every character. If that were not so, then there would be no restoration and the capital of the institution would remain deficient, or, in the present instance, the bank would have continued insolvent from 1927 on. The capital assets of a bank constitute a trust fund for the creditors and they have a superior right to it. Even where one in good faith and as an accommodation to the bank entered into a plan to liquefy a frozen asset and executed his personal notes, secured by a mortgage on real estate transferred to him for the purpose by the original creditor of the bank, we have held him liable for a balance to the Banking Commissioner as statutory receiver of the bank, where it was necessary to discharge its liabilities because his notes had been regarded as part of the bank's assets and he was estopped to deny his liability. This conclusion was based upon the fact that the situation he had assisted in creating had caused the bank's financial soundness to be misrepresented to the public by making it to appear solvent. Denny v. Fishter, 238 Ky. 127, 36 S. W. (2d) 864, 865. The logic of this decision is emphasized in Denny v. Wood, 238 Ky. 252, 37 S. W. (2d) 51. A note was executed to a bank by a director for the purpose of augmenting the assets until such time as the profits could pay it or it could be taken out of the assets by a reduction in the capital structure. In time the note was charged off at the instance or with the approval of a bank examiner, the bank being left solvent. Three years later the bank was closed because of insolvency. The court denied the right of the Banking Commissioner to collect the note because no creditor could say that he had been deceived since the note had not been carried as an asset in recent years.

The principle of these decisions is in accord with other authorities. 7 Am. Jur., Banks, Sec. 784; Annotations, 55 A. L. R. 794; 88 A. L. R. 996. Upon that principle, if the execution of notes to aid a bank be no defense to a cause of action upon them for the use and

benefit of depositors, a fortiori, a claim based upon a contribution made for that purpose 10 years before and permitted to remain in the assets without a corresponding liability appearing on the books cannot be regarded as prior or even equal in dignity to the claims of depositors and other creditors. We have held so specifically in Wood v. Wilhoit, Banking & Securities Com'r, 291 Ky. 175, 164 S. W. (2d) 478, and McWhorter v. Wilhoit, 293 Ky. 41, 168 S. W. (2d) 335.

We do not think the Insurance Corporation can be said to be estopped to rely upon this principle because of the entry on the minute book of the directors. The amount was not shown on the account books of the bank. If the presumption should be indulged that the Corporation knew of this minute, or if it should be held chargeable with knowledge of it, yet the record was nothing more than the recognition of an obligation which should be paid when the bank should become solvent without the amount appearing as an asset, or when it was not actually needed for that purpose. That condition never occurred. The countervailing presumption is that the Corporation realized the nature and character of the potential claim, namely, that it was at all times inferior to the rights of the depositors. Having reached the conclusion that the FDIC stands in the shoes of the depositors whom it paid, it necessarily follows that it is not estopped to assert its prior claim.

The judgment is reversed.

Whole Court sitting.